# IN THE FEDERAL DISTRICT COURT FOR TENNESSEE
## AT NASHVILLE

| | |
|---|---|
| WILLIAM E. KANTZ, JR., | ) |
|     *PLAINTIFF,* | ) |
|     v. | ) Case No.    3:15-CV-0932 |
| FEDERAL HOME LOAN MORTGAGE CORPORATION, | ) |
|     *DEFENDANTS.* | ) |
| | ) |
| v. | ) |
| | ) |
| RUBIN LUBLIN TN, PLLC, and | ) |
| BANK OF AMERICA, NA, | ) |
|     THIRD-PARTY DEFENDANTS. | ) |

## ANSWER
## AND COUNTER-CLAIM FOR DECLARATORY ACTION AND OTHER RELIEF
## AND
## THIRD-PARTY CLAIMS AGAINST RUBIN LUBLIN TN, PLLC AND
## BANK OF AMERICA, NA

Come now William E. Kantz, Jr., ("Mr. Kantz") by and through counsel, and hereby files his Answers to the Davidson County General Sessions Warrant removed to this Court, and files his Counter-Claim for an Order of Declaratory Judgment setting aside the **August 26, 2014** fraudulent foreclosures on his residence and granting other relief. Mr. Kantz further files his Third-Party claims against Rubin Lublin TN, PLLC and Bank of America, N.A.

### Answer

1.    The allegations made on the face of the Davidson County General Sessions Detainer Warrant are denied and strict proof is demanded thereof;

### Counter-Claim

Comes now Mr. Kantz and hereby asserts his Counter-Claim against Federal Home Loan Mortgage Company ("FHLMC");

1

## Third-Party Claims

Mr. Kantz and hereby asserts his, Rubin Lublin TN, PLLC ("Rubin Lublin"), and Bank of America, N.A. ("Bank of America"). Mr. Kantz prays for multiple forms of relief.

Venue and jurisdiction are proper. The United States District Court for the Middle District of Tennessee, Nashville Division embraces Davidson County, Tennessee. Removal of this matter from state was made in accordance with 28 U.S.C. § 1446 and Fed. R. Civ. P. 81. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 because the case raises claims under the laws of the United States and 12 U.S.C. § 1452(f). Said federal claims are under the Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.), the Real Estate Settlement Procedures Act (12 U.S.C. §§ 2601-2617 *et seq*.), and the Truth in Lending Act (15 U.S.C. § 1601 *et seq*.).

Mr. Kantz further brings this suit under the provisions of Tenn. Code Ann. §29-14-101, *et seq*., (especially §29-14-104), Tenn. Code Ann. §47-18-101, *et seq*. (especially 47-18-104(39), and other state law remedies for which the Court has supplemental jurisdiction pursuant to 28 U.S.C. §§ 1367(a), 1441(a).

Mr. Kantz would state to the Court as follows:

## Parties

2.      William E. Kantz, Jr. is a residence and citizen of Davidson County, residing at 1244 Mary Helen Drive, Nashville, Tennessee at all times relevant to this matter. The 1244 Mary Helen Drive property is at issue in this case;

3.      Rubin Lublin TN, PLLC is a Professional Limited Liability Company and law firm organized and existing under the laws of the state of Tennessee and is doing business in Davidson County, Tennessee. Rubin Lublin clamed to be the Substitute Trustee acting in behalf of Bank of America on August 26, 2014. The Registered Agent is Natalie Brown, Rubin Lublin TN . PLLC, 119 South Main Street, Suite 500, Memphis, Tennessee 38103. Rubin Lublin TN,

2

PLLC's employee, attorney Bret Chaness, claims he is Bank of America's legal counsel;

2.      The Federal Home Loan Mortgage Corporation ("FHLMC") is an entity which Bank of America allegedly sold Mr. Kantz' residence on February 20, 2014. FHLMC is a federally chartered corporation created by Congress on July 24, 1970. On September 6, 2008, the Director of the Federal Housing Finance Agency ("FHFA") appointed FHFA as FHLMC's conservator. As conservator, FHFA has all rights, titles, powers, and privileges of FHLMC, and of any stockholder, officer, or director of FHLMC with respect to FHLMC and its assets; and title to the books, records and assets of FHLMC. Under Fed. R. Civ. P. 17, an action must be prosecuted in the name of the real party in interest. Under Fed. R. Civ. P. 19(a), FHFA is a required party for the just adjudication of this action. FHFA, not FHLMC in its own right, is the real party in interest in this case.[1] FHLMC has its corporate headquarters located at 8200 Jones Branch Drive, McLean, Virginia, and is doing business in Davidson County, Tennessee. The Tennessee Secretary of State does not have an address on its website for a registered agent for FHFA or FHLMC on whom legal process may be served.  FHLMC's address may be 2300 Windy Ridge Parkway SE, Suite 200, North Tower, Atlanta, Georgia 30339.  According to the recorded Substitute Trustee's Deed, on or about February 20, 2014, Bank of America sold it the property by having "transferred and assigned its bid to the "Federal Home Loan Mortgage Corporation;"

3.      Bank of America, N.A. was allegedly both the holder and servicer of Mr. Kantz's Note and Deed of Trust at the time of the February 20, 2014 foreclosure sale.  It did not own the Property or the Note at the time of the August 26, 2014 foreclosure sale.  Its address is "attn.:

---

[1] If a person is not joined as required, the court must order the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff. Fed. R. Civ. P. 19(a).

Correspondence Unit, Mail Stop CA6-919-01-41, P. O. Box 5170, Simi Valley, California 93062;

4.     At all relevant times herein, FHFA, FHLMC, and Rubin Lublin were the agent, principal and/or authorized representative of each other and at all relevant times herein acted within the scope of such relationships and on behalf of and with the approval, consent and/or encouragement of each other. The debt collection activities, including mortgage loan foreclosure, were within the scope of one or more agency and/or sub-agency relationships amongst the persons named in this paragraph.

## FACTS

5.     On or about December 20, 2007, Mr. Kantz entered into a Note and Deed of Trust with Bank of America to purchase a residence located at 1244 Mary Helen Drive, Nashville, Tennessee.  Mr. Kantz and Ms. Lee executed a Deed of Trust to secure a Promissory Note in the amount of $391,800.00 made payable to Bank of America, NA. (Exhibit A).  The Promissory Note us a negotiable instrument governed by Article 3 of the Uniform Commercial Code;

6.     In late 2013 / early 2014, Bank of America began foreclosure proceedings. According to the foreclosure sale notice, the sale was set for February 20, 2014, at 11:00 AM on the front steps of the Davidson County Courthouse, Nashville Tennessee;

7.     On February 20, 2014, Mr. Kantz's property had a fair market value of $560,000.00;

8.     Mr. Kantz appeared at the courthouse approximately twenty (20) minutes prior to the designated sale time and waited for his opportunity to purchase the property;

9.     Rubin Lublin TN, PLLC had (at least) three (3) foreclosure sales on behalf of Bank of America scheduled for February 20, 2014 in Davidson County;

10.     In its efforts to foreclose on Mr. Kantz' property Rubin Lublin TN, PLLC and Bank of America were acting as "debt collectors" as defined in 15 U.S.C. § 1692(a). Bank of America, through its agent Rubin Lublin, were trying to collect the consumer note entered into by Mr. Kantz by foreclosing on his residence which had been pledged as security;

11.     On February 20, 2014, at 11:00 AM, no person appeared in behalf of Bank of America and/or Rubin Lublin TN, PLLC to "cry the sale" at the allotted time and place;

12.     Mr. Kantz waited for a representative of Bank of America and/or Rubin Lublin TN, PLLC to arrive, but no one ever appeared on February 20, 2014;

13.     Surveillance tapes from the area and Mr. Kantz's personal video recordings show no foreclosure sale was conducted;

14.     Shortly thereafter, Mr. Kantz made inquiries to Rubin Lublin about why the sale was not properly cried;

15.     That same day, February 20, 2014 at 4:09 PM, Bret Chaness, an attorney with Rubin Lublin falsely told Mr. Kantz's counsel via email that "I've been assured that the sale was indeed cried;" (Exhibit B);

16.     Mr. Chaness knew or should have known that the sale had not been cried when he intentionally made this materially false statement;

17.     On February 28, 2014, Rubin Lublin's employee, attorney Victor Kang[2], executed a Substitute Trustee's Deed falsely stating a proper sale had been cried/conducted. Mr. Kang identified himself as "Member, Rubin Lublin TN, PLLC:" (Exhibit C). The Deed was recorded on March 6, 20-14 at the Davidson County Register of Deeds;

18.     The Substitute Trustee's Deed (allegedly) conveys the property to FHLMC as required under the Deed of Trust;

---

[2] Mr. Kang is also a licensed attorney in Tennessee (Since 2013, BPR# 31632) and Georgia since 2007.

19.     On February 25, 2014, attorney Chaness sent an email in response to Mr. Kantz's inquiry (through counsel) as to why no one was present to cry the sale.  When asked why no sale took place Mr. Chaness became defensive and stated in part:

> If you have this evidence [of no crier], please provide it. Otherwise, there is nothing further that we will be doing with regard to this sale. (Exhibit D);

20.     Mr. Chaness did not, and nor has Bank of America, **ever** been able to identify its own employee or agent that *allegedly* appeared and cried the sale. (This is not surprising as video records shows no one was present);

21.     Mr. Kantz's Deed of Trust specifically requires that the property be sold at the foreclosure sale. (Exhibit A);

22.     The Deed of Trust (Paragraph 22) outlines the Trustee's duties and states:

> **If Lender invokes the power of sale**, **Trustee shall** … **sell the Property** at public auction to the highest bidder at the time and under the terms designated in the notice of sale. (bold added).

And,

> Trustee **shall deliver to the purchaser** [a] Trustee's deed conveying the Property without any covenant of warranty, expressed or implied. (bold added).

23.     On March 6, 2014, Rubin Lublin TN, PLLC recorded a Substitute Trustee's Deed in the Davidson County Register of Deeds (Exhibit C).  In the Substitute Trustee's Deed Rubin Lublin TN, PLLC claimed:

> WHEREAS, the Substitute Trustee at the time, place and date specified in said notices appeared and offered the property for sale, and after opening the floor for competitive bids, sold said Property to **Bank of America, N.A.** at the price of **Three Hundred Ninety-Eight Thousand One Hundred Twenty-Six Dollars and 15//100 ($398,126.15)** this being the highest, last, and best bid; and,

> WHEREAS, **Bank of America, N.A.,** as successful purchaser at said sale, transferred and assigned its bid to FEDERAL HOME LOAN MORTGAGE CORPORATION.

6

NOW, THEREFORE, Rubin Lublin TN, PLLC, Substitute Trustee as aforesaid, in consideration of the premises and the sum of Three Hundred Ninety-Eight Thousand One Hundred Twenty-Six Dollars and 15//100 ($398,126.15) to me <u>in hand paid, the receipt of which is hereby acknowledged</u>, by these presents <u>do transfer and convey</u> unto **FEDERAL HOME LOAN MORTGAGE CORPORATION ("Grantee"),** its successors and assigns, <u>all right, title and interest in and to the Property</u>…

(Exhibit C, page 2) (bold in original, underline added).

24.     On February 27, 2014, attorney Chaness sent an email in response to Mr. Kantz's request (through counsel) as to why no one was present to cry the sale.  The email stated in part:

Once I look into the matter further I will reply to your email. And I am telling you [Mr. Kantz's attorney] that you can't speak with my client **because they are represented by an attorney in this matter (my firm),** not because you are an attorney. (Exhibit E) (bold added);

25.     On March 7, 2014 at 12:59 PM, attorney Chaness sent an email stating:

My office has conducted further investigation into the sale and have discovered **no irregularities whatsoever**. The individual who cried the sale has assured us that the sale was cried. (Exhibit F) (bold added);

26.     Two (2) hours later, at 2:37 PM, Mr. Chaness sent a threatening email:

You cannot contact **my client independently** and any attempt to do so will result in my firm filing a complaint against you with the Board of Professional Responsibility. (Exhibit G) (Bold Added);

27.     On or about June 27 and July 11, 2014, Mr. Kantz made a Qualified Written Requests (under RESPA) to Bank of America for information regarding his loan.  On July 18, 2014, Bank of America responded:

Please note our records reflect that the **subject property was sold** at the foreclosure sale held on February 20, 2014.

(Exhibit H, page 1, 2nd paragraph) (Bold added).

28.     Despite the above representations by Bank of America, and its attorneys, in <u>August</u> 2014 it published a second Notice of Foreclosure which stated:

WHEREAS, the beneficial interest of said Deed of Trust was last transferred and assigned to BANK OF AMERICA, N.A. **who is now the holder of said debt**; and… (bold added).

And,

> WHEREAS, the sale is being conducted pursuant to the authority granted by the June 27, 2014, Minute Entry of the United States District Court for the Middle District of Tennessee, Case no, 3:14-01113. (Exhibit I)

29.     FHLMC knew or should have known on August 4, 2014 it had no right to purchase the <u>Note</u> from Bank of America, and any such transfer/purchase clearly violated Mr. Kantz's Deed of Trust, and far-exceeded the Substitute Trustee's legal authority;

30.     FHLMC knew that on August 4, 2014, that it had purchased the <u>Property</u> from Bank of America on or about February 20, 2014, and therefore had <u>no right</u> to demand *any sums* from Mr. Kantz under the Note <u>it did not own</u>;

31.     After February 20, 2014, FHLMC did not convey the Property back to the Bank of America;

32.     As shown above, the Deed of Trust clear terms <u>only</u> allow Bank of America to <u>sell</u> the Property once it has "invoked the power of sale..." ("If Lender invokes the power of sale, Trustee shall … sell the Property at public…") (Exhibit A).  By initiating the foreclosure process Bank of America "invoked the power of sale" on Mr. Kantz's home;

33.     On June 27, 2014, a case management conference was held in a prior case (14-0113) at which time the Court directed Mr. Kantz would be allowed thirty (30) days to repurchase his home (the "Property"), and if unable, the Defendants would have thirty (30) days to arrange the re-noticing of the foreclosure sale.  The Court's Minutes state:

> … Case will be stayed for a total of sixty (60) days, as set forth on the record in open court. Plaintiff will have thirty (30) days to **arrange the repurchase of the subject property**; if Plaintiff does not do so, Defendants will then have an additional thirty (30) days to **arrange notice and sale of the property**. Parties will then file additional briefing addressing the mootness of certain claims.  (bold added). (Exhibit J).

34.     When this Order was entered FHLMC, Rubin Lublin TN, PLLC and Rubin Lublin LLC were the <u>only</u> Defendants. (Bank of America was <u>not a Defendant/Party</u> in the case);

35.     Once the Property was allegedly sold to FHLMC in February, the Deed of Trust was (or should have been pursuant to Tennessee law) released and Bank of America's Substitute Trustee no longer had any authority to take any action with regard to the Property;

36.     Despite the requirement the **Property** be sold, Bank of America claims it sold the **Note** to FHLMC;

37.     On or about June 27 and July 11, 2014, Mr. Kantz made a Qualified Written Requests (under RESPA) to Bank of America for information regarding his loan.

38.     On July 30, 2014, Blank Rome, attorneys for Bank of America responded:

> Pursuant to 15 U.S.C. § 1641(f)(2), the current **owner of the note** is the Federal Home Loan Mortgage corporation, which has an address of ….
> The current servicer of the Loan is Bank of America …
>
> (Exhibit K, p. 2, 3rd paragraph) (bold added).

39.     On August 4, 2014, Bank of America responded:

> [In accordance with] Section § 1641(f), the current **owner of the note** is:
> **Federal Home Loan Mortgage Corporation**
> Attn: Consumer Care
> 8200 Jones Branch Drive
> McLean, Virginia 22102
>
> (Exhibit L, p. 1, 3rd paragraph) (bold added).

40.     On September 16, 2014, Blank Rome sent a letter on behalf of Bank of America stating:

> … as indicated in the prior response, the **Federal Home Loan Mortgage Corporation was and remains the owner** of the note pursuant to …
>
> (Exhibit M, p. 2, 3rd paragraph) (bold added).

And,

> As indicated in Bank of America's correspondence to you dated September 4, 2014, the **Federal Home Loan Mortgage is the investor in the Loan, which owns the note** and is the party entitled to payment…
>
> (Exhibit M, p. 2, 4th paragraph) (bold added).

41.     Rubin Lublin caused to be published[3] a Notice of Trustee's Sale scheduling the foreclosure sale of the Property for August 26, 2014.  Despite the above representations by Bank of America, and its attorneys, the August 2014 Notice of Foreclosure which stated:

> WHEREAS, the beneficial interest of said Deed of Trust was last transferred and assigned to BANK OF AMERICA, N.A. **who is now the holder of said debt**; and… (bold added).

And,

> WHEREAS, the sale is being conducted pursuant to the authority granted by the June 27, 2014, Minute Entry of the United States District Court for the Middle District of Tennessee, Case no, 3:14-cv-01113. (Exhibit I)

42.     FHLMC knew or should have known on August 4, 2014 that it had no right to purchase the Note from Bank of America, and that any such transfer/purchase clearly violated Mr. Kantz's Deed of Trust, and exceeded the Substitute Trustee's legal authority;

43.     FHLMC knew that Bank of America was not a party in Case No. 3:14-CV-1113 and therefore said "minute entry was not binding on Bank of America;

44.     On July 28, 2014, Mr. Kantz sent a letter to Rubin Lublin TN, PLLC demanding to know under what authority it had to foreclosure on his property. (Exhibit N).  Rubin Lublin did not respond to this letter;

45.     Rubin Lublin TN, PLLC was not an agent, employee or representative of FHLMC after February 20, 2014, or at the time of the August 26, 2014 foreclosure sale;

46.     Rubin Lublin TN, PLLC did not have a written document giving it authority to act on FHLMC's behalf;

47.     No Notice of Substitute Trustee showing FHLMC appointing Rubin Lublin TN, PLLC as Substitute Trustee is recorded in the Davidson County Register of Deed's Office;

---

[3] Tennessee Code Ann. 35-5-101(a) requires three (3) notices be published.

48.    On August 26, 2014, Rubin Lublin TN, PLLC conducted a foreclosure sale on behalf of Bank of America, an entity that did not own the land nor the Note.  Attorney Bret Chaness was the sale crier and claimed to be crying the sale on behalf of Bank of America;

49.    On September 2, 2014, Rubin Lublin TN, PLLC's employee, attorney Victor Kang, executed a Substitute Trustee's Deed asserting that a proper sale had been cried/conducted on August 26, 2014. (Exhibit O).  Mr. Kang identified himself as "Member of Rubin Lublin LLC, the Member of Rubin Lublin TN, PLLC." (underline added);

50.    Mr. Kang's "authority" in the March 2014 Substitute Trustee's Deed differs from the September 2, 2014 deed created to cover up the earlier fraud perpetrated on Mr. Kantz. (see Exhibit C, in which Mr. Kang *falsely* identified his title and himself as a "Member" of Rubin Lublin TN, PLLC);

51.    The Tennessee Secretary of State's website shows that Rubin Lublin TN PLLC only has one (1) member, and according to the September 2, 2014 Substitute Trustee's Deed, that member is Rubin Lublin LLC, not Mr. Kang. (Exhibit P);

52.    The September 2014 Substitute Trustee's Deed further falsely claims that Bank of America, N.A. is the holder of the Note;

## COUNT I  - DECLARATORY RELIEF

53.    Mr. Kantz incorporates by reference the facts and allegations in the previous paragraphs 1 -  52 as if fully set forth herein;

54.    The Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201 *et seq*., provides:

(a) In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

Case 3:15-cv-00932   Document 9   Filed 09/24/15   Page 11 of 27 PageID #: 120

55. Declaratory relief is appropriate and necessary to establish the putative foreclosure, i.e., the August 26, 2014, of the Property were unlawful;

56. Pursuant to the DJA and the Tennessee Declaratory Judgment Act, Tenn. Code Ann. § 29- 14-101 *et seq*., Mr. Kantz requests a declaratory judgment that August 26, 2014 foreclosure sale was unlawful and did not extinguish otherwise impaired or impeded any third-party's rights in and to the Property;

57. Mr. Kantz prays the Court determine and hold that Bank of America had no right to foreclose on Mr. Kantz's Note on August 26, 2014;

58. Mr. Kantz prays the Court determine and hold that the August 2014 Notice of Foreclosure incorrectly identified Bank of America as the holder of the Note;

59. Mr. Kantz prays the Court determine and hold that Bank of America, and its agent Rubin Lublin TN, PLLC, allegedly acting as Substitute Trustee, did not and could not have properly conducted the August 26, 2014 sale, and therefore the sale is invalid due to the numerous breaches of the Deed of Trust;

60. Mr. Kantz prays that the Court determine and hold that the August 26, 2014 foreclosure sale was invalid and return his residence to him;

61. Mr. Kantz prays that the Court determine and hold that Bank of America and Rubin Lublin TN, PLLC intentionally and willfully misrepresented to Mr. Kantz, the public at large, and the Court that it had the authority and to conduct the August 26, 2014 foreclosure sale, and then misrepresented that the same was in fact properly cried and conducted;

62. Mr. Kantz requests actual damages in the amount of the fair market value of his residence's equity as of August 26, 2014 ($160,000.00), additional compensatory damages as may be proven at trial, and reasonable attorney's fees and costs as permitted under the Deed of Trust and relevant state and federal law;

## COUNT II - FRAUD IN THE AUGUST 26, 2014 FORECLOSURE SALE
### (Wrongful Foreclosure)

63.     Mr. Kantz incorporates by reference the facts and allegations in paragraphs 1 - 62 as if fully set forth herein;

64.     FHLMC, Bank of America and Rubin Lublin TN, PLLC committed intentional and willful fraud by conducting a foreclosure sale pursuant to a misleading sale notice. Their failure to comply with the Deed of Trust's requirements, including, but not limited to, proper notice and crying of the sale, pre- and post-sale deception concerning the alleged sale, and the immediate sale/transfer of the Note to FHLMC (an insider) at a prices grossly below its non-fair market value, but at a profit for itself;

65.     The fraudulent acts are referenced above and include the following:

a)  FHLMC taking any actions while under the conservator of FHLA in violation of 12 U.S.C. 4617(b)(2)(B)(iii) & 12 U.S.C. 4617(b)(2)( (A)(i);

b)  The Defendants' demand that Mr. Kantz pay of the entire indebtedness when knew and or should have known that it did not and could not have owned the Note under the specific terms of the Deed of Trust.

c)  The Defendants' demand that Mr. Kantz pay $460,000.00+ for a Note it allegedly purchased in February 2014 for approximately $420,000, and thus attempting to make a $40,000.00+ profit on its and Bank of America's intentional fraud;

d)  The Defendants' deception to the Court at the June 27, 2014 Case Management Conference in which it offered to sell (with no intent to perform) the Note at the price it paid at the February 20, 2014 sale;

e)  FHLMC's in-court deception at the June 27, 2014 Case Management Conference when it implied that it was the <u>Property owner</u>, when in fact it later claimed to be the <u>Note holder</u>;

f)  The Defendants' defraud Mr. Kantz and the public when it published the August 2014 Notice of Sale which failed to properly identify the Note holder and the authority under which the sale was permitted;

g)  The Defendants' defraud Mr. Kantz and the public when it published the August 2014 Notice of Sale which failed to properly identify all third party interest in the Property;

h)  Not having a chain of title that would allow the foreclosing party to actually conduct the August 2014 foreclosure sale;

66.     Mr. Kantz requests actual damages of $160,000.00, statutory and punitive damages and reasonable attorney's fees and costs as permitted under Tennessee and federal law;

## COUNT III -  BREACH OF CONTRACT

67.     Mr. Kantz incorporates by reference the facts and allegations in paragraphs 1 - 66 as if fully set forth herein;

68.     FHLMC, itself and through its agent, Rubin Lublin TN, PLLC, intentionally and willfully breached the Deed of Trust by failing to comply with the Deed of Trust's clear and exact post-invocation of the deed's "power of sale" provisions.  These violations in August, 2014, include but not limited to, improper notice, improper crying of the sale, refusal at the sale to identify the true Note holder, and post-sale misrepresentation concerning the sale;

69.     Despite instructions that the opening bid was to be $398,126.15, and a required closing bid of $461,259.51, Bank of America sold the property to FHLMC for $398,126.15;

70.     Bank of America and FHLMC's actions violate the good faith and fair dealing requirement found in all Tennessee contracts;

71.     Mr. Kantz requests actual damages of $160,000.00, punitive damages, return of his residence, and reasonable attorney's fees and costs as permitted under state and federal law.

## COUNT IV -  VIOLATION OF TENNESSEE CODE ANNOTATED § 47-18-104(b)(39)
### (The Tennessee Consumer Protection Act)

72.     Mr. Kantz incorporates by reference the facts and allegations in paragraphs 1 - 71 as if fully set forth herein;

73.     Tennessee Code Annotated § 47-18-104, commonly known as the Tennessee Consumer Protection Act, makes it a deceptive practice or act to:

14

(a) Unfair or deceptive acts or practices affecting the conduct of any trade or commerce constitute unlawful acts or practices and are Class B misdemeanors.

(b) The following unfair or deceptive acts or practices affecting the conduct of any trade or commerce are declared to be unlawful and in violation of this part:

…

**(39) Representing that a person, or such person's agent, authorized designee or delegee for hire, has conducted a foreclosure on real property, when such person knew or should have known that a foreclosure was not actually conducted on the real property;**

74.    Bank of America, and through its agents, Rubin Lublin TN, PLLC misrepresented to Mr. Kantz and to the public at large it "conducted a foreclosure on real property" when it had actual and constructive knowledge it had no authority to conduct a sale on behalf of Bank of America on August 26, 2014;

75.    FHLMC, as the alleged holder of the Note, misrepresented to Mr. Kantz and the public at large that it conducted a foreclosure sale on August 26, 2014.  FHLMC further intentionally and willfully allowed a Notice of Sale to be published which it knew contained materially misleading information concerning the debt owed and the Note holder;

76.    FHLMC actions in not conducting the foreclosure sale and then affirmatively misrepresenting the same, are *per se* violations of the Tennessee Consumer Protection Act;

77.    Bank of America itself, and through its agents, Rubin Lublin TN, PLLC actions in continuing to affirmatively misrepresent to Mr. Kantz, his counsel and the Court are *per se* violations of the Tennessee Consumer Protection Act;

78.    Bank of America itself, and through its agent, Rubin Lublin TN, PLLC actions in conducting the August 26, 2014 foreclosure sale and continuing to affirmatively misrepresent to

Mr. Kantz, his counsel and the Court material facts concerning the sale are criminal acts under Tennessee law;

79. Mr. Kantz prays that costs and attorney's fees be awarded under the Tennessee Consumer Protection Act;

80. Mr. Kantz further requests actual damages of $160,000.00, and punitive damages as permitted under the Tennessee Consumer Protection Act and/or the trebling of his compensatory damages, and reasonable attorney's fees and costs as permitted under the Tennessee Consumer Protection Act;


**COUNT V - VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**

81. Mr. Kantz incorporates by reference the facts and allegations in paragraphs 1 - 80 if fully set forth herein;

82. The Fair Debt Collection Practices Act's stated purpose is to prevent abusive, misleading, and deceptive debt collection practices," 15 U.S.C. 1692(a);

83. The FDCPA prohibits the use of any conduct the natural consequence of which is to harass, oppress, or abuse any person, 15 U.S.C. § 1692d, any false, deceptive or misleading representations or means, 15 U.S.C. § 1692e, and any unfair or unconscionable means, 15 U.S.C. § 1692f, to collect or attempt to collect any debt. See also Federal Trade Commission, *Staff Commentary on the FDCPA*, §§ 806, 807(5), 808. The FDCPA also requires a debt collector to provide a validation notice. 15 U.S.C. § 1692g.

84. The FDCPA targets a wide array of unfair, harassing, deceptive, confusing, and unscrupulous collection practices by debt collectors. It bans not only outright falsehoods, but also any 'false, deceptive, or misleading' debt-collection practices. The FDCPA specifically outlaws "[t]he threat to take any action that cannot legally be taken or that is not intended to be

taken." And while "Congress did not turn every violation of state law into a violation of the [FDCPA] . . . [t]he legality of the action taken under state law may be relevant."

85.    Any debt collector who fails to comply with any provision of the FDCPA is liable to the person harmed;

86.    FHLMC, Rubin Lublin and Bank of America are "debt collectors" under the FDCPA;

87.    Mr. Kantz is a "consumer" who became was "indebted or allegedly indebted" to Bank of America when he borrowed money to purchase a home to use as his personal residence. (Exhibit A).  15 U.S.C. 1692a(3);

88.    Under the FDCPA a "debt" is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes."  15 U.S.C. § 1692a(5). Kantz incurred the BANA Promissory Note ("BANA Mortgage Loan"), secured by the BANA Deed of Trust, primarily for personal, family, and household purposes. Therefore, under the FDPCA, Mr. Kantz is a consumer under the FDCP Act and his obligation is a "consumer debt;"

89.    The term "debt collector" is defined to include "any person ... who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Under the FDCPA (a) the ultimate purpose of mortgage foreclosure is the payment of money and/or to obtain payment of a debt; (b) if a purpose of an activity taken in relation to a debt is to obtain payment of the debt the activity is properly considered debt collection; and (c) mortgage foreclosure is debt collection, all three activities in which Freddie Mac and Rubin Lublin engage.

90.    FHLMC and Rubin Lublin's mortgage foreclosure and debt collection activities

17

concern a debt, i.e., the Bank of America mortgage loan, which was in default at the time it was consigned, sold or otherwise transferred to FHLMC and Rubin Lublin for servicing and/or collection. FHMLC and Rubin Lublin are persons who regularly collect or attempt to collect debts owed or due or asserted to be owed or due another. FHLMC and Rubin Lublin are persons who regularly enforce security interests;

91. FHLMCand Rubin Lublin are debt collectors under the FDCPA.

92. Under the FDCPA a "communication" is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). Unlike other provisions of the FDCPA, 15 U.S.C. § 1692f does not require a "communication." All written and oral communications and representations of FHLMC and Rubin Lublin as described herein are communications under the FDCPA;

93. Prior to August foreclosure sale, FHLMC and Rubin Lublin had actual and record notice of the Bank of America Deed of Trust, the deeds of trust of third party creditors, the February 2014 Notices of Sale, the FHFA Conservatorship, the March 2014 Substitute Trustee's Deed, and the August 2014 Notices of Sale and actual notice of the secured debts of third parties.

94. FHLMC and/or Bank of America, and through its agents and attorneys, Blank Rome, Rubin Lublin TN, PLLC, made intentional and willful misrepresentations intentionally created confusion related to ownership and existence of the mortgage, and the collection of his consumer debt to Mr. Kantz in violation the FDCP Act, including but not limited to independent claims under § 1692(d), § 1692(e) and § 1692(f). These misrepresentations have been outlined in detail above and are incorporated by reference. These misrepresentations include:

a) Misrepresenting the August 2014 foreclosure sale was properly advertised, held, cried, and concluded, as required under the Deed of Trust and Tennessee law;

b) Misrepresenting at the August 2014 foreclosure sale that Bank of America was the holder of Mr. Kantz's mortgage;

c) Misrepresenting at the August 2014 foreclosure sale that Rubin Lublin was still the Substitute Trustee and that it had authority to conduct the August sale;

d) Misrepresenting at the August 2014 foreclosure sale that FHMLC was the buyer of Bank of America's "right title and interest in and to the Property" (which includes the mortgage) at the August sale;

e) The September Substitute Trustee's Deed, recorded to memorialize the August 2014 foreclosure sale, misrepresents that Bank of America was the owner of the mortgage, that it demanded that the Property be advertised and sold – despite not having a valid security interest in the Property;

f) The September Substitute Trustee's Deed misrepresents that Rubin Lublin was "dully appointed" to act as the Substitute Trustee.  This cannot be possible as the Substitute Trustee's authority would have terminated upon the conclusion of its duties after the February 20, 2014 foreclosure sale and transfer of the Property. (Tenn. Code Ann. § 35-5-114(b)(1) provides that a substitute trustee is appointed by filing a substitution of trustee with the register of deeds of the county in which the property is situated);

g) The September Substitute Trustee's Deed misrepresents that Rubin Lublin caused to be published the sale notice as required under Tenn. Code Ann. § 35-5-104 and the Deed of Trust.  This is not possible after the February 20, 2014 sale;

h) The September Substitute Trustee's Deed misrepresents that the Property would be sold on August 26, 2014 pursuant to Tenn. Code Ann. § 35-5-104 and the Deed of Trust.  This is not possible after the February 20, 2014 sale;

i) The September Substitute Trustee's Deed misrepresents that Rubin Lublin had the authority to appear and cry the sale on August 26, 2014. This is not possible after the February 20, 2014 sale;

j) The September Substitute Trustee's Deed misrepresents that Bank of America owned the mortgage.  This is not possible after the February 20, 2014 sale;

k) The September Substitute Trustee's Deed misrepresents that Rubin Lublin had the authority to conduct the sale, and after receiving bids, sell the Property in behalf of Bank of America. had the authority to appear and cry the sale on August 26, 2014. This is not possible after the February 20, 2014 sale;

l) The September Substitute Trustee's Deed misrepresents that Rubin Lublin had the authority to convey the Property to FHLMC.  This is not possible after the February 20, 2014 sale;

m) The September Substitute Trustee's Deed misrepresents that Victor Kang, the signer of the September 2014 Substitute Trustee's Deed, is a member of Rubin Lublin, LLC, and authorized to execute the September 2014 Substitute Trustee's Deed. Victor Kang signed the verification under penalty of perjury. This is confusing and false, inasmuch as the March 2014 Substitute Trustee's Deed, also signed by Victor Kang under penalty of perjury, identifies Victor Kang as a member of Rubin Lublin TN, PLLC, a different legal entity; and,

n) The Deed of Trust, section 18, allows the foreclosing parties to sell the Property and further provides, section 23, that "[u]pon payment of all sums secured by [the BANA Deed of Trust]" the Deed of Trust shall be released. The September 2014 Substitute

Trustee's Deed represents that Rubin Lublin, after opening the floor for competitive bids, sold the Property to BANA at the price of Three Hundred Ninety-Eight Thousand One Hundred Twenty-Six and 15/100 ($398,126.15). This is not possible after the February 20, 2014 sale;

95.     The debt collection practices listed above and incorporated by reference were (a) confusing, false, deceptive and misleading in violation of 15 U.S.C. § 1692e and (b) unfair and unconscionable in violation of 15 U.S.C. § 1692f;

96.     In addition, at the time the fraudulent February 20, 2014 foreclosure sale was conducted, Blank Rome, and Rubin Lublin TN, PLLC were Bank of America's attorneys, and attempting to collect Mr. Kantz's consumer debt;

97.     At all times Blank Rome, FHLMC and Rubin Lublin TN, PLLC were acting as debt collectors on behalf of Bank of America as defined under 15 U.S.C.A. § 1692(a) et seq.;

98.     Pursuant to the Deed of Trust's clear terms, after invoking the power of sale provision of Paragraph 22, Bank of America had only the legal authority to sell the Property, which it allegedly did to FHLMC in February 2014. (Exhibit A):

99.     After the February 20, 2014 foreclosure sale, Bank of America (allegedly) received $398,215.51 from FHLMC which should have been applied to the Note balance pursuant to the Deed of Trust.  Instead, Bank of America (through FHLMC) demanded the entire balance of $460,000+;

100.     Upon payment, Bank of America would have had to release its Deed of Trust to convey clear title to FHLMC, leaving Bank of America with an unsecured Note, the balance of which would have been decreased by $398,215.51;

101.     Since FHLMC could never have owned the Note pursuant to the Deed of Trust, after February 20, 2014, it was acting as Bank of America's agent and as a "debt collector" when

it attempted to collect Mr. Kantz's mortgage by demanded he pay "the entire indebtedness in full." (Exhibit H);

102.    Although FHLMC, Bank of America, Blank Rome and Rubin Lublin TN, PLLC communicated with Mr. Kantz concerning his debt, neither sent the statutorily required written notice under 15 U.S.C. 1692(g) to allow Mr. Kantz to dispute the validity of the debt;

103.    On June 27, 2014 and July 11 2014, Mr. Kantz sent letters disputing the debt to FHLMC and Bank of America and demanded information concerning the authority to conduct the August foreclosure sale and the Note holder's identity.  The July 11, 2014 letter states in part:

> … [Mr. Kantz and counsel] we are in dispute as to the identity of the true owner of this debt (if any), and your authority and capacity (if any) to collect on behalf of the same. We are also in dispute about the proper application of payments from the debtors to interest, principal, escrow advances and expenses (in that order of priority as provided for in the loan instruments); about your use of automatically triggered property inspections and broker price opinion charges and fees based on undisclosed accounting for purported arrears; and about legal fees and expenses that have been attached to this account but that have not been otherwise explained or established to the borrower. …
>
> (Exhibit Q, page 1, 3rd paragraph).

Despite this request, FHLMC and Bank of America refused to verify the debt at issue or provide this and other requested information.  At no time did Bank of America ever produce an assignment or other document showing the alleged transfer of the Note to FHLMC;

Pursuant to the FDCP Act, upon a request for verification a debt collector must cease collection efforts until such time as the debt was verified.  To the extent the FHLMC, Bank of America (and its attorneys Blank Rome and Rubin Lublin TN, PLLC) responded they provided false, incorrect, and misleading information concerning who was the Note holder and the Note's current balance;

104.    In response to these requests Bank of America responded by letter dated July 18, 2014 that despite its "records reflect[ing] that the property was sold at the foreclosure sale held

on February 20, 2014" that Mr. Kantz's balance was **$365,736.09** as of April 24, 2014. (Exhibit R).  Bank of America, and its attorneys, misrepresented debt by failing to give Mr. Kantz credit for the $398,125.51 it received from FHLMC at the foreclosure sale.  This misrepresentation of the balance clearly violates the FDCP Act;

105.    On July 30, 2014, Bank of America's attorneys, Blank Rome, sent a letter contradicting the prior letter's claim that the property had been sold.  Blank Rome claimed that FHLMC, not Bank of America, was the current Note owner. (Exhibit S).  Despite earlier "records reflect[ing] that the property was sold at the foreclosure sale held on February 20, 2014" it claimed balance was $365,736.09 as of April 24, 2014. (Exhibit R).  This letter further detailed a dizzying array of charges and credits starting in April 2013 and continuing past the February 20, 2014 sale.  The failure to give Mr. Kantz a clear and accurate loan balance, and the failure to give credit for FHLMC's the $398,126.51 payment, violates the FDCP Act;

106.    In addition, Bank of America charged Mr. Kantz for securing a "force-placed" insurance policy on February 24, 2014, effective February 21, 2014.  However, on February 20, 2014, Bank of America allegedly sold the Property and no longer had an "insurable interest" in the same.  (Blank Rome's letter even contains a copy of the March 6, 2014 Substitute Trustee's Deed showing the clear and unequivocal sale to FHLMC (Exhibit T, page 31)).  The charging of post-foreclosure sale insurance premiums is fraudulent, a breach of the deed of trust, and violates the FDCP Act, RESPA and the Truth in Lending Act;

107.    On August 4, 2014, Bank of America sent a letter contradicting its prior letter's claim that the Property had been sold, and now claimed that FHLMC was now the current Note owner. (Exhibit L).  Bank of America claimed balance was $365,736.09 as of April 24, 2014, two (2) months after the alleged sale.  Bank of America misrepresented the debt by failing to give Mr. Kantz credit for the $398,125.51 that it received from FHLMC as evidenced by the

March 6, 2014 Substitute Trustee's Deed. (Exhibit C).  This misrepresentation of the balance violates the FDCPA;

108.  None of the above letters gave Mr. Kantz a "current balance" that was less than three (3) months out of date, and none gave him a pay off balance to allow him to pay off the indebtedness.  These material misrepresentations violated the FDCPA;

109.  None of these letters explain why Bank of America allegedly made a credit bid of $398,215.51 on February 20, 2014 on a Note in which its admitted balance was only $365,736.09, nearly $33,000.000 less, as of April 24, 2014.   The demanding of an extra $33,000.00 at the February 20, 2014 foreclosure sale is a material misrepresentations violating the FDCP and RESPA;

110.  On September 4, 2014, Bank of America sent another letter which failed to advise Mr. Kantz of his current balance. (Exhibit U).  This letter also identified FHLMC as the "investor" or Note holder.  These material deceptions violated the FDCP. Act and RESPA;

111.  On September 16, 2014, Bank of America sent yet another letter which failed to advise Mr. Kantz of his current balance. (Exhibit M). This letter also identified FHLMC as the "investor" or Note holder.  These material misrepresentations violated the FDCP. Act;

112.  The sending of letters to Mr. Kantz that misstated the debt due are *per se* violations of the FDCP Act;

113.  The sending of letters to Mr. Kantz that misstated the holder of the note as FHLMC are *per se* violations of the FDCP Act;

114.  The FDCPA is a strict liability statute;

115.  When engaging in the acts as set forth hereinabove, the Defendants and their representatives, and each of them, acted maliciously, i.e., with ill will, hatred and/or spite. The Defendants' conduct and actions also constitute such a reckless disregard for the rights of others

that a conscious indifference to consequences can be implied.

116.    The FDCPA allows recovery of statutory or actual damages for violations. (15 U.S.C. 1692e;

117.    Mr. Kantz has actual damages of $160,000.00, statutory damages of $1,000 per violation, and punitive damages and attorney's fees as permitted under the FDCPA;

## COUNT VI - VIOLATIONS OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT AND THE TRUTH IN LENDING ACT (15 U.S.C. §1601 *et seq.*)

118.    Mr. Kantz incorporates by reference the facts and allegations in paragraphs 1 - 117 as if fully set forth herein;

119.    As shown by the numerous letters cited above and incorporated by reference, Bank of America (and its agents/attorneys Blank Rome and Rubin Lublin TN, PLLC) as servicer has misrepresented the Note's owner of as being FHLMC despite actual knowledge that the Deed of Trust required the Property to be sold, the Property was in fact sold, and that it prepared and recorded a Substitute Trustee's Deed affirming the fact the Property was sold;

120.    Despite these actions, Bank of America and FHLMC (and their agents/attorneys Blank Rome, and/or Rubin Lublin TN, PLLC) conspired together post-foreclosure sale to cover up the earlier sham sale, and the immediate transfer of the Property.  A transaction by which Bank of America profited more than $22,000.00, and FHLMC profited over $40,000 – all at Mr. Kantz's expense;

121.    After the February foreclosure sale, Bank of America as servicer orchestrated a sham "assignment" from Bank of America to FHLMC to cover up its illegal profit;

122.    Bank of America as the owner pre- and post- foreclosure sale of the Note, used Rubin Lublin TN PLLC, and FHLMC as its servicing agents to perpetrate this fraud on Mr. Kantz and the Court;

24

Case 3:15-cv-00932   Document 9   Filed 09/24/15   Page 24 of 27 PageID #: 133

that a conscious indifference to consequences can be implied.

116.    The FDCPA allows recovery of statutory or actual damages for violations. (15 U.S.C. 1692e;

117.    Mr. Kantz has actual damages of $160,000.00, statutory damages of $1,000 per violation, and punitive damages and attorney's fees as permitted under the FDCPA;

## COUNT VI - VIOLATIONS OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT AND THE TRUTH IN LENDING ACT (15 U.S.C. §1601 *et seq.*)

118.    Mr. Kantz incorporates by reference the facts and allegations in paragraphs 1 - 117 as if fully set forth herein;

119.    As shown by the numerous letters cited above and incorporated by reference, Bank of America (and its agents/attorneys Blank Rome and Rubin Lublin TN, PLLC) as servicer has misrepresented the Note's owner of as being FHLMC despite actual knowledge that the Deed of Trust required the Property to be sold, the Property was in fact sold, and that it prepared and recorded a Substitute Trustee's Deed affirming the fact the Property was sold;

120.    Despite these actions, Bank of America and FHLMC (and their agents/attorneys Blank Rome, and/or Rubin Lublin TN, PLLC) conspired together post-foreclosure sale to cover up the earlier sham sale, and the immediate transfer of the Property.  A transaction by which Bank of America profited more than $22,000.00, and FHLMC profited over $40,000 – all at Mr. Kantz's expense;

121.    After the February foreclosure sale, Bank of America as servicer orchestrated a sham "assignment" from Bank of America to FHLMC to cover up its illegal profit;

122.    Bank of America as the owner pre- and post- foreclosure sale of the Note, used Rubin Lublin TN PLLC, and FHLMC as its servicing agents to perpetrate this fraud on Mr. Kantz and the Court;

123.    Mr. Kantz further requests actual damages of $160,000.00, statutory damages of up to $ 2,000 per violation, and a penalty of $500,000.00 or 1% of Defendants' net worth, as provided by 15 U.S.C. § 1640(a)(1)-(2), and attorney's fees and costs as permitted;

## COUNT VII - CONSPIRACY

124.    Mr. Kantz incorporates by reference the facts and allegations in paragraphs 1 - 123 as if fully set forth herein;

125.    The facts and allegations above show the Defendants acted together as an association of entities acting in their own selfish interests, and that they acted together to accomplish by concert an unlawful purpose and/or a lawful purpose not in itself unlawful by unlawful means. as an association of entities acting in their own selfish interests;

126.    The Defendant's conspired with their attorneys and agents, Rubin Lublin and Blank One, to provide false responses to RESPA allowed Qualified Written Requests to create the false impression that Mr. Kantz note had been sold with actual knowledge that this was not permitted under the Deed of Trust;

127.    The Defendants conspired to create phony Note account balances, both by making improper charges and failing to give Mr. Kantz credit for payments made, for the purpose of demanding more than he owed to prevent him from repurchasing his home, and for the purpose of profitably reselling his home for which they would not have to give him credit;

128.    The Defendants conspired to provide false, insufficient and conflicting responses to Mr. Kantz's RESPA allowed Qualified Written Requests.  These false statements include misrepresentations concerning the Note's holder/investor, continued refusal to identify the *alleged* February foreclosure sale crier, intentionally and willfully misrepresenting the Note's balance, the intentional addition of improper post-sale charges;

129. The Defendants conspired to conduct a mis-advertised August 26, 2014 foreclosure sale to prevent "interested parties" and third parties from participating in the sale so that the Note holder could purchase the Property at a discount and resell the same at a profit;

130. The Defendants also conspired to engage in the above acts, violating Tennessee and federal law as outlined herein, which include a) Fraud; b) Breach of Contract; c) Wrongful Foreclosure; d) Violating the Tennessee Consumer Protection Act; e) Violating the Fair Debt Collection Practices Act; and, f) Violations of the Real Estate Settlement Procedures Act and the Truth in Lending Act.

131. Mr. Kantz has been damaged as shown in the counts above and hereby demands compensatory, statutory, and punitive damages, and reasonable attorney's fees and costs.

**WHEREFORE, PREMISES CONSIDERED**, Mr. Kantz prays for the following relief:

1. That service of process issue and be served upon FHLMC, Bank of America, N.A. and Rubin Lublin TN, PLLC, and that they be required to appear and answer;

2. For an Order declaring the Defendants' conduct related to the August 26, 2104 foreclosure sale was fraudulent, and award compensatory, statutory, and punitive damages, as well as attorney's fees and costs as allowed by law;

3. For an Order awarding compensatory damages for breach of contract in the amount of $160,000.00, or the amount determined at trial;

4. For an Order requiring Mr. Kantz's home be re-conveyed to him;

5. For an Order declaring the Defendants' conduct violated the Tennessee Consumer Protection Act and award compensatory damages in the amount of $160,000.00 or as determined at trial, punitive damages or treble damages, and reasonable attorney's fees and costs;

6. For an Order declaring the Defendants' conduct violated the Fair Debt Collection

Practices Act, including but not limited to independent claims under § 1692(d) - § 1692(f), and award compensatory damages in the amount of $160,000.00 or as determined at trial, statutory damages of $1,000 per violation, punitive damages, and reasonable attorney's fees and costs;

      7.     For an Order declaring the Defendants' conduct violated the Real Estate Settlement Procedures Act and the Truth in Lending Act and award compensatory damages in the amount of $10,000.00 or as determined at trial, statutory damages of up to $2,000 per violation, punitive damages, and reasonable attorney's fees and costs as allowed by the Act;

      8.     For an Order declaring the Defendants conspired to cause harm to Mr. Kantz and award the above-referenced damages jointly and severally against the Defendants; and,

      9.     For whatever relief is equitable and just.

Respectfully submitted:

___/s/_____ James D. R. Roberts, Jr._____
Roberts & Associates, Attorneys at Law
James D. R. Roberts, Jr., #017537
1700 Hayes Street, Suite 201
P. O. Box 331606
Nashville, Tennessee 37203
(615) 242-2002 office
(615) 242-2042 facsimile
Attorneys for William E. Kantz, Jr.
Jim.Roberts@RobertsandAssociatesLaw.com


Certificate of Service

I certify a copy of this Answer and Counter-Claim has been served on the following via the Court's ECF and United States Mail to FHLMC c/o Wilson & Associates, PLLC 1521 Merrill Drive, Suite D-220 Little Rock, AR 72211; Rubin Lublin TN, PLLC, by its Registered Agent Natalie Brown at 119 S. Main Street, Suite 500 Memphis, TN 38103; and Bank of America at its corporate address of Attn.: Correspondence Unit, Mail Stop CA6-919-01-41, P. O. Box 5170, Simi Valley, California 93062 on this the 24th day of September, 2015.

                     ___/S/ JIM ROBERTS_____
                     Jim Roberts