**FEDERAL HOME LOAN MORTGAGE CORPORATION,** §
    **Plaintiff,** § **Case No. 3:15-cv-00932**
    §
**v.** § **Judge Campbell**
    § **Magistrate Judge: Bryant**
**WILLIAM E. KANTZ, JR.,** §
**Defendant,** §
_____ §
    §
**WILLIAM E. KANTZ, JR.,** §
    **Third-Party Plaintiff,** §
    §
 **v.** §
**BANK OF AMERICA, N.A.,** §
**RUBIN LUBLIN TN, PLLC,** §
    **Third-Party Defendants,** §
_____ §
    §
**FLEX YIELD INVESTMENTS, LLC,** §
    **Intervenor,** §
**v.** §
    §
**FEDERAL HOUSING FINANCING** §
**AGENCY, on its own behalf and as** §
**conservator of FEDERAL HOME LOAN** §
**MORTGAGE CORPORATION,** §
    **Intervenor-Defendant and** §
    **Real Party in Interest,** §
    §
**and** §
    §
**RUBIN LUBLIN TN, PLLC.** §
**Intervenor-Defendant.** §
_____ §

**<u>AMENDED</u> ANSWER AND <u>AMENDED</u> COUNTER-CLAIM FOR DECLARATORY**
**ACTION AND OTHER RELIEF AGAINST THE FEDERAL HOME LOAN**
**MORTGAGE CORPORATION AND THIRD-PARTY CLAIMS AGAINST RUBIN**
**RUBLIN TN, PLLC and AND BANK OF AMERICA, NA**

    Come now William E. Kantz, Jr., ("Mr. Kantz") by and through counsel, and hereby files

his Amended Answer to the Davidson County General Sessions Warrant removed to this Court,

and files his Amended Counter-Claim against the Federal Home Loan Mortgage Corporation ("Freddie Mac") for an Order of Declaratory Judgment setting aside the **August 26, 2014** fraudulent foreclosure on his residence and granting other relief. Mr. Kantz further amends his Third-Party claims against Rubin Lublin, PLLC and Bank of America, N.A.

## Amended Answer

1. The allegations made on the face of the Davidson County General Sessions Detainer Warrant seeking possession of the property are denied and strict proof is demanded thereof. Mr. Kantz raises the affirmative defense of wrongful foreclosure as allowed under Tennessee law. "There is absolutely no doubt that wrongful foreclosure can be raised as an affirmative defense to an unlawful detainer action brought by the purchaser of property in foreclosure. *Citifinancial Mortgage Co., Inc. v. Beasley*, No. W2006-00386-COA-R3-CV, 2007 WL 77289 at *5 (Tenn. Ct. App. Jan. 11, 2007); *Federal Nat'l Mortgage Ass'n v. Robilio*, No. W2007-01758-COA-R3-CV, 2008 WL 2502114 at *5 (Tenn. Ct. App. June 24, 2008). "Where title bears directly upon the right of possession . . . a party may legitimately interpose the issue." *Beasley*, 2007 WL 77289 at *6. It is the purchaser's "constructive entry" onto the premises through the title obtained in foreclosure that "provides the basis for maintaining the unlawful detainer action." Id. at *7. *Davis v. Williams*, E2010-01139-COA-R3-CV (Tenn. Ct. App. Jan. 31, 2011). The issue of *possession* of Mr. Kantz's Property was not raised in the previous litigation and therefore can be freely raised in this matter.

## Counter-Claim

2. Comes now Mr. Kantz and hereby amends his Counter-Claim against Federal Home Loan Mortgage Company ("Freddie Mac");

## Third-Party Claims

3. Mr. Kantz and hereby amends his third-party claim against Rubin Lublin TN, PLLC ("Rubin Lublin"), and Bank of America, N.A. ("BANA" or "Bank of America"). Mr. Kantz prays for multiple forms of relief.

## JURISDICTION AND VENUE

4. The United States District Court for the Middle District of Tennessee, Nashville Division embraces Davidson County, Tennessee. Removal of this matter from state was made in accordance with 28 U.S.C. § 1446 and Fed. R. Civ. P. 81. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 because the case raises claims under the laws of the United States and 12 U.S.C. § 1452(f). Said federal claims are under the Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.), the Real Estate Settlement Procedures Act (12 U.S.C. §§ 2601-2617 *et seq*.), and the Truth in Lending Act (15 U.S.C. § 1601 *et seq*.).

5. This Court has jurisdiction over this action pursuant to 12 U.S.C. § 1452(f), whereby all civil actions to which Federal Home Loan Mortgage Corporation is a party shall be deemed to arise under the laws of the United States and the district courts of the United States shall have original jurisdiction of all such actions without regard to amount or value.

6. This Court has supplemental jurisdiction over this matter pursuant to 28 U.S.C. § 1367 because certain of the claims herein are so related to claims in the action within such original jurisdiction of the Court that they form part of the same case or controversy under Article III of the United States Constitution.

7. Mr. Kantz further brings this suit under the provisions of Tenn. Code Ann. §29-14-101, *et seq*., (especially §29-14-104), Tenn. Code Ann. §47-18-101, *et seq*. (especially 47-18-104(39), and other state law remedies for which the Court has supplemental jurisdiction pursuant to 28 U.S.C. §§ 1367(a), 1441(a).

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial

part of the events or omissions giving rise to the claims occurred in this district, all of the property that is the subject of this action is located in this district, and the defendants regularly conduct business in this district.

**Parties**

9.      William E. Kantz, Jr. is a residence and citizen of Davidson County, residing at 1244 Mary Helen Drive, Nashville, Tennessee at all times relevant to this matter.  The 1244 Mary Helen Drive property is at issue in this case;

10.      Rubin Lublin TN, PLLC ("Rubin Lublin") is a Professional Limited Liability Company and law firm organized and existing under the laws of the state of Tennessee and is doing business in Davidson County, Tennessee. Rubin Lublin clamed to be the Substitute Trustee acting in behalf of Bank of America on August 26, 2014.  The Registered Agent is Natalie Brown, Rubin Lublin TN. PLLC, 119 South Main Street, Suite 500, Memphis, Tennessee 38103.  Rubin Lublin TN, PLLC's employee, attorney Bret Chaness, claims he is Bank of America's legal counsel;

11.      The Federal Home Loan Mortgage Corporation ("Freddie Mac") is an entity which Bank of America allegedly sold Mr. Kantz' residence to on February 20, 2014.  Freddie Mac is a federally chartered corporation created by Congress on July 24, 1970.  On September 6, 2008, the Director of the Federal Housing Finance Agency ("FHFA") appointed FHFA as Freddie Mac conservator. As conservator, FHFA has all rights, titles, powers, and privileges of Freddie Mac, and of any stockholder, officer, or director of Freddie Mac with respect to Freddie Mac and its assets; and title to the books, records and assets of Freddie Mac. Under Fed. R. Civ. P. 17, an action must be prosecuted in the name of the real party in interest. Under Fed. R. Civ. P. 19(a), FHFA is a required party for the just adjudication of this action. FHFA, not Freddie

Mac in its own right, is the real party in interest in this case.[1] Freddie Mac has its corporate headquarters located at 8200 Jones Branch Drive, McLean, Virginia, and is doing business in Davidson County, Tennessee. The Tennessee Secretary of State does not have an address on its website for a registered agent for FHFA or Freddie Mac on whom legal process may be served. Freddie Mac's address may be 2300 Windy Ridge Parkway SE, Suite 200, North Tower, Atlanta, Georgia 30339. According to the recorded Substitute Trustee's Deed, on or about February 20, 2014, Bank of America sold it the property by having "transferred and assigned its bid to the "Federal Home Loan Mortgage Corporation." The Tennessee Secretary of State does not have an address on its website for a registered agent for FHFA or Freddie Mac on whom legal process may be served.

12.     Bank of America, N.A. was allegedly both the holder and servicer of Mr. Kantz's Note and Deed of Trust at the time of the February 20, 2014 foreclosure sale. It <u>did not own</u> the Property or the Note *at the time of the August 26, 2014 foreclosure sale*. Its address is "attn.: Correspondence Unit, Mail Stop CA6-919-01-41, P. O. Box 5170, Simi Valley, California 93062;

13.     At all relevant times herein, FHFA, Freddie Mac, and Rubin Lublin were the agent, principal and/or authorized representative of each other and at all relevant times herein acted within the scope of such relationships and on behalf of and with the approval, consent and/or encouragement of each other. The debt collection activities, including mortgage loan foreclosure, were within the scope of one or more agency and/or sub-agency relationships amongst the persons named in this paragraph.

---

[1] If a person is not joined as required, the court must order the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff. Fed. R. Civ. P. 19(a).

## FACTUAL AND PROCEDURAL BRACKGROUND

### A.  The Property:

14.     On or about December 20, 2007, Mr. Kantz entered into a Note and Deed of Trust with to purchase a residence located at 1244 Mary Helen Drive, Nashville, Tennessee.  Mr. Kantz and Ms. Lee executed a Deed of Trust to secure a Note in the amount of $391,800.00 made payable to Bank of America, NA. (Exhibit A).[2]  The Note is a negotiable instrument governed by Article 3 and/or 9 of the Uniform Commercial Code;

15.     On April 29, 2011 Kantz executed to Investors Title Company, as trustee, a deed of trust ("FirstBank Deed of Trust") relating to the Property to secure a line of credit in the amount of $300,000.00 of which 50,330.87 was then due ("FirstBank Note") payable to the order of FirstBank Branch 70 ("FirstBank"), as owner and holder of the FirstBank Note and due and payable as further set forth in said FirstBank Deed of Trust, which FirstBank Deed of Trust was received for record in May 2011 and recorded as Instrument No. 20110506-0035172 in the Register's Office of Davidson County, Tennessee. The FirstBank Note secured by the FirstBank Deed of Trust is a negotiable instrument governed by Article 3 and/or 9 of the Uniform Commercial Code.

### B. FHFA and Freddie Mac.

16.     FHFA is an independent federal agency created under the Housing and Economic Recovery Act of 2008 ("HERA"), Pub. L. No. 110-289, 122 Stat. 2654, codified at 12 U.S.C. § 4511 et seq.

17.     Freddie Mac is a corporation chartered by Congress to establish secondary market facilities for residential mortgages, provide stability in the secondary market for residential mortgages, and promote access to mortgage credit throughout the United States. 12 U.S.C. §

---

[2] Pursuant to Fed. R. Evid. 201, Mr. Kantz requests this Court take judicial notice of all relevant public documents filed with the Davidson County Register of Deeds.

1454. Freddie Mac buys residential mortgages from banks, repackages them for sale as mortgage-backed securities, and guarantees these securities by promising to make investors whole if borrowers default.

18.     In September 2008, FHFA exercised its power under HERA to place Freddie Mac into conservatorship for the purpose of reorganizing, rehabilitating, or winding up its affairs. 12 U.S.C. § 4617(a)(2). FHFA was appointed conservator and, as such, succeeded to all rights, titles, powers, and privileges of Freddie Mac ("FHFA Conservatorship"). 12 U.S.C. § 4617(b)(2)(A)(i). As conservator, FHFA is authorized to take over the assets of and operate Freddie Mac with all the powers of the shareholders, the directors, and the officers of Freddie Mac and to preserve and conserve the assets and property of Freddie Mac. 12 U.S.C. §§ 4617(b)(2)(A)(i), (B)(i), (B)(iv). FHFA, as conservator, stepped into the shoes of Freddie Mac and immediately succeeded to all of its assets. HERA's provisions make it clear that, in the event Freddie Mac was placed into conservatorships, Congress intended FHFA to assume complete control of Freddie Mac. 12 U.S.C. § 4617(b)(2)(D)(i).

19.     In April 2011, FHFA issued a directive to Freddie Mac to implement consistent mortgage loan servicing and delinquency management requirements.  Subject to the supervision of FHFA, Freddie Mac contracts with numerous servicers who perform activities such as collecting and delivering principal and interest payments, administering escrow accounts, monitoring and reporting delinquencies, and performing default prevention activities. Servicers must comply with various requirements set forth in agreements they have with Freddie Mac.

20.     In September 2011, Freddie Mac issued a Servicing Guide announcement dealing with property maintenance ("Servicing Guide").  The Servicing Guide provides, for example, that if a mortgage loan is delinquent, the servicer must order a property inspection no later than the 45th day of delinquency, and the property must be inspected no later than the 60th day of

7

delinquency. Pursuant to the Servicing Guide, the servicer must continue to obtain property inspections every 30 days as long as the mortgage loan remains delinquent for 45 days or more. The Servicing Guide advises servicers to consult Freddie Mac's reimbursement provisions for the allowable amounts for property preservation work. Servicers are directed to take whatever action is necessary to protect the value of the property and perform property maintenance throughout the foreclosure process.

21. HERA and the courts contemplate FHFA's participation in litigation. See 12 U.S.C. § 4617(b)(12) (providing statutes of limitations "for any action brought by [FHFA] as conservator or receiver"). One of FHFA's rights as conservator of Freddie Mac is to perform all functions of Freddie Mac in the name of Freddie Mac. 12 U.S.C. § 4617(b)(2)(B)(iii). FHFA's statutory authority to take actions that are appropriate to carry on the business of Freddie Mac and preserve and conserve its assets and property. 12 U.S.C. § 4617(b)(2)(A)(i). This includes asserting and protecting Freddie Mac's rights by filing suit. Congress could not have intended for FHFA to take over the business of Freddie Mac but then have no ability to seek court action on its behalf.

22. Section 4617(a)(7) of HERA provides that "[w]hen acting as conservator or receiver, [FHFA] shall not be subject to the direction or supervision of any other agency of the United States or any State in the exercise of the rights, powers, and privileges of [FHFA]." 12 U.S.C. § 4617(a)(7). Once placed in conservatorship, Congress intended for FHFA to be the sole entity responsible for operating Freddie Mac's nationwide business of purchasing and securitizing mortgages. 12 U.S.C. § 4617(a)(7). Congress intended for FHFA to possess exclusive authority over Freddie Mac's business operations, including its management of the homes in which it has a security interest.

**C. The Faked February and August 2015 Foreclosure Sales**

23.     The foreclosure portion of the debt collection industry is largely made up of small to medium size companies whose profit models depend on the rapid and high-volume turnover of families' homes.  Some of these companies, commonly referred to as "foreclosure mills," are actually loosely knit groups of individual attorneys who, through mass multi-state advertisement, hold themselves out to the public as full-service and one-stop debt collectors.  Rubin Lublin is one such debt collection company.

24.     Foreclosure trustees are responsible for conducting non-judicial foreclosures, called trustee's sales, in accordance with Tenn. Code Ann. § 35-5-101 *et seq*. Rublin Lublin is a law firm that includes attorneys who regularly, frequently and consistently perform debt collection and property foreclosure activities as part of their business services.

25.     The "feeder" companies to foreclosure mills like Rubin Lublin include the holders and servicers of troubled, defaulted and nonperforming mortgage loans that were purchased, often without any advance due diligence, from large financial institutions as part of bundled and securitized investment packages sometimes consisting of thousands of other debt obligations. Freddie Mac is one such company.

26.     Successor trustees under deeds of trust are addressed by statute.  A substitution of trustee is required to be recorded prior to any foreclosure sale. Tenn. Code Ann. § 35-5-114(c). A substitute trustee is appointed by recording a substitution of trustee with the register of deeds of the county in which the property is situated. Tenn. Code Ann. § 35-5-114(b)(1).  In the event the substitution of trustee is not filed prior to the first date of publication it must (a) be timely recorded prior to recording the trustee's deed evidencing the foreclosure sale and (b) contain specific statutory language ratifying and confirming the substitute trustee's actions. Tenn. Code Ann. § 35-5-114(b)(3)(A), (B).

27.     Sections 22 and 24 of the BANA Deed of Trust provide, in part:

22. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and under the terms designated in the notice of sale.

24. Substitute Trustee. Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law

28.     On June 4, 2013, Rubin Lublin was appointed by BANA as substitute trustee under the Deed of Trust ("Substitution of Trustee"), presumably pursuant to Tenn. Code Ann. § 35-5- 114(b)(1) and/or the provisions of the BANA Deed of Trust.  The Substitution of Trustee was recorded with the Davidson County Register of Deeds at Instrument No. 20130604-0056186.

29.     On February 6, 2014, Rubin Lublin advertised a Notice of Substitute Trustee's Sale ("February 2014 Notice of Sale") scheduling the foreclosure sale of the Property for February 20, 2014.  The February 2014 Notice of Sale was presumably one of three identical advertised notices required under Tenn. Code Ann. § 35-5-101(a) (collectively, "February 2014 Notices of Sale").

30.     In the February 2014 Notices of Sale Rubin Lublin represents, among other things:

a.  The beneficial interest of the BANA Deed of Trust "was last transferred and assigned to [BANA] who is now the holder of said debt."

b.  "[Rubin Lublin], having been appointed as Substitute Trustee by instrument to be filed for record in the Register's Office of Davidson County, Tennessee."

c.  "[Rubin Lublin], as Substitute Trustee or his [sic] duly appointed agent, by virtue of the power, duty and authority vested and imposed upon said Substitute Trustee will, on February 20, 2014 at 11:00 AM at the Front Entrance of the Historic Courthouse located at 1 Public Square, located in Nashville, Tennessee, proceed to sell at public outcry ..."

d.  "The sale of the [Property] shall be subject to all matters shown on any recorded plat."

10

e. "The right is reserved to adjourn the day of the sale to another day, time, and place certain without further publication, upon announcement at the time and place for the sale set forth above."

f. "[T]he the title [to the Property] is believed to be good."

g. Rubin Lublin is "attempting to collect a debt."

31. In late 2013 / early 2014, Bank of America began foreclosure proceedings. According to the foreclosure sale notice, the sale was set for February 20, 2014, at 11:00 AM on the front steps of the Davidson County Courthouse, Nashville Tennessee;

32. On February 20, 2014, Mr. Kantz's property had a fair market value of $560,000.00;

33. Mr. Kantz appeared at the courthouse approximately twenty (20) minutes prior to the designated sale time and waited for his opportunity to purchase the property;

34. Rubin Lublin TN, PLLC had (at least) three (3) foreclosure sales on behalf of Bank of America scheduled for February 20, 2014, in Davidson County;

35. In its efforts to foreclose on Mr. Kantz' property Rubin Lublin TN, PLLC and Bank of America were acting as "debt collectors" as defined in 15 U.S.C. § 1692(a). Bank of America, through its agent Rubin Lublin, were trying to collect the consumer note entered into by Mr. Kantz by foreclosing on his residence which had been pledged as security;

36. On February 20, 2014, at 11:00 AM, no person appeared in behalf of Bank of America and/or Rubin Lublin TN, PLLC to "cry the sale" at the allotted time and place;

37. Mr. Kantz waited for a representative of Bank of America and/or Rubin Lublin TN, PLLC to arrive, but no one ever appeared on February 20, 2014 to cry the sale;

38. Surveillance tapes from the area and Mr. Kantz's personal video recordings show no foreclosure sale was conducted;

39.     Shortly thereafter, Mr. Kantz and others made inquiries to Rubin Lublin about why the sale was not properly cried;

40.     Rubin Lublin claims the Property was duly sold at a February 20, 2014, foreclosure sale – for which Rubin Lublin claims it was the duly appointed substitute trustee of record – and that the foreclosure sale was properly noticed, convened, cried, conducted and concluded ("February sale").  At the February sale Rubin Lublin did not exercise any right "upon announcement at the time and place for the sale" "to adjourn the day of the sale to another day, time, and place certain;"

41.     That same day, February 20, 2014 at 4:09 PM, Bret Chaness, an attorney with Rubin Lublin, falsely told one of Mr. Kantz's creditors via email that "I've been assured that the sale was indeed cried." (Exhibit B).

42.     Rubin Lublin admitted in June 2015 it did not conduct the foreclosure sale of property owned by John and Mary Richardson scheduled for the same date and time.  Rubin Lublin claims it hired Moonlighters Enterprises, Inc., located at 44 North Second Street, Suite 503, Memphis, Tennessee 38103, to conduct the Richardson's sale which was also faked.  On information and belief, either Rubin Lublin or Moonlighting acting as Rubin Lublin's agent, faked the sale on Mr. Kantz's home as well.

43.     Mr. Chaness knew or should have known that the sale had not been cried when he intentionally made this materially false statement on February 20, 2014.

44.     On February 28, 2014, Rubin Lublin's employee, attorney Victor Kang[3], executed a Substitute Trustee's Deed falsely stating a proper sale had been cried/conducted.  Mr. Kang identified himself as "Member, Rubin Lublin TN, PLLC:" (Exhibit C).  The Deed was recorded on March 6, 20-14 at the Davidson County Register of Deeds.

---

[3] Mr. Kang is also a licensed attorney in Tennessee (Since 2013, BPR# 31632) and Georgia since 2007.

45.     On February 25, 2014, attorney Chaness sent an email in response to Mr. Kantz's

creditor's inquiry as to why no one was present to cry the sale.  When asked why no sale took

place Mr. Chaness became defensive and stated in part:

> If you have this evidence [of no crier], please provide it. Otherwise, there is
> nothing further that we will be doing with regard to this sale. (Exhibit D).

46.     Mr. Chaness did not, and nor has Bank of America, **ever** been able to identify its

own employee or agent who *allegedly* appeared and cried the sale. (This is not surprising as

video surveillance records shows no one was present to cry any of the three (3) scheduled sales).

47.     Mr. Kantz's Deed of Trust specifically requires the property be sold at the

foreclosure sale. (Exhibit A).

48.     The Deed of Trust (Paragraph 22) outlines the Trustee's duties and states:

> **If Lender invokes the power of sale**, **Trustee shall** … **sell the Property** at
> public auction to the highest bidder at the time and under the terms designated in
> the notice of sale. (bold added).

> And,

> Trustee **shall deliver to the purchaser** [a] Trustee's deed conveying the Property
> without any covenant of warranty, expressed or implied. (bold added).

49.     On March 6, 2014, Rubin Lublin TN, PLLC recorded a Substitute Trustee's Deed

in the Davidson County Register of Deeds (Exhibit C).  In the Substitute Trustee's Deed Rubin

Lublin TN, PLLC claimed:

> WHEREAS, the Substitute Trustee at the time, place and date specified in said
> notices appeared and offered the property for sale, and after opening the floor for
> competitive bids, sold said Property to **Bank of America, N.A.** at the price of
> **Three Hundred Ninety-Eight Thousand One Hundred Twenty-Six Dollars**
> **and 15//100 ($398,126.15)** this being the highest, last, and best bid; and,

> WHEREAS, **Bank of America, N.A.,** as successful purchaser at said sale,
> transferred and assigned its bid to FEDERAL HOME LOAN MORTGAGE
> CORPORATION.

> NOW, THEREFORE, Rubin Lublin TN, PLLC, Substitute Trustee as aforesaid,
> in consideration of the premises and the sum of Three Hundred Ninety-Eight

13

Thousand One Hundred Twenty-Six Dollars and 15//100 ($398,126.15) to me <u>in hand paid, the receipt of which is hereby acknowledged</u>, by these presents <u>do transfer and convey</u> unto **FEDERAL HOME LOAN MORTGAGE CORPORATION ("Grantee"),** its successors and assigns, <u>all right, title and interest in and to the Property</u>…

(Exhibit C, p. 2) (bold in original, underline added).

50.     On March 6, 2014, Rubin Lublin recorded a substitute trustee's deed concerning Sale #1 with the Davidson County Register of Deeds at Instrument No. 20140306-0018906 ("March Trustee's Deed"). (Exhibit C).

51.     On March 7, 2014 at 12:59 PM, attorney Chaness sent an email stating:

My office has conducted further investigation into the sale and have discovered **no irregularities whatsoever**. The individual who cried the sale has assured us that the sale was cried. (Exhibit E) (bold added).

52.     According to Rubin Lublin's annual filings with the Tennessee Secretary of State's office ("Filed Member Status"), Rubin Lublin had only one member between March 11, 2013, and the date March Trustee's Deed was recorded.

53.     Under penalty of perjury, Rubin Lublin's authorized representative and purported sole member, Victor Kang ("Kang"), signed March Trustee's Deed.

54.     In the March Trustee's Deed Rubin Lublin represents, among other things:

a.  Rubin Lublin was BANA's duly appointed substitute trustee for the February sale.

b.  The Property was sold to BANA for $398,126.15 paid in hand to and acknowledged by Kang ("Purchase Price #1").

c.  BANA was the highest, last and best bid at Sale #1 ("Winning Bid #1").

d.  BANA transferred and assigned Winning Bid #1 to the Federal Home Loan Mortgage Corporation ("Freddie Mac") ("Bid Assignment #1"); and

e.  Rubin Lublin transferred and conveyed to Freddie Mac all of Rubin Lublin's right, title and interest in and to the Property.

55.     On March 7, 2014, fifteen (15) days after the February sale, and the day after March Trustee's Deed was recorded, Rubin Lublin changed its address with the Tennessee

Secretary of State's office from a location in Georgia to a location in Tennessee ("Change of Address").

56.     On June 27, 2014, in the case styled *Kantz v. Rubin Lublin, PLLC, et al.,* No. 3:14-cv-01113 (M.D. Tenn.), the Court entered a minute entry stating: "Plaintiff will have thirty (30) days to arrange the repurchase of the [Property]; if Plaintiff does not do so, [Rubin Lublin and Freddie Mac – the only parties] will then have an additional thirty (30) days to arrange notice and sale of [the Property]." See Case No. 3:14-cv-01113, Minute Entry of June 27, 2014 (no DE reference). The Court confirmed that its Minute Entry "applies to all parties" and that "the Court speaks through its orders not minute entries" ("Minute Entry Order").

57.     On or about June 27 and July 11, 2014, Mr. Kantz made a Qualified Written Requests (under RESPA) to Bank of America for information regarding his loan.  On July 18, 2014, Bank of America responded:

> Please note our records reflect that the **subject property was sold** at the foreclosure sale held on February 20, 2014.
> (Exhibit F, page 1, 2nd paragraph) (Bold added).

58.     Freddie Mac knew Bank of America was not a party in Case No. 3:14-CV-1113 and therefore said "minute entry was not binding on Bank of America.

59.     On July 28, 2014, Mr. Kantz sent a letter to Rubin Lublin TN, PLLC demanding to know under what authority it had to foreclosure on his property. (Exhibit G).  Rubin Lublin did not respond to this letter.

60.     Rubin Lublin TN, PLLC was not an agent, employee or representative of Freddie Mac after February 20, 2014, or at the time of the August 26, 2014 foreclosure sale.

61.     Rubin Lublin TN, PLLC did not have a written document giving it authority to act on Freddie Mac's behalf.

62.    No Notice of Substitute Trustee showing Freddie Mac appointing Rubin Lublin TN, PLLC as Substitute Trustee is recorded in the Davidson County Register of Deed's Office.

63.    On August 4, 2014, Rubin Lublin advertised a Notice of Substitute Trustee's Sale ("August 2014 Notice of Sale") scheduling the foreclosure sale of the Property for August 26, 2014. The August 2014 Notice of Sale was presumably one of three identical advertised notices required under Tenn. Code Ann. § 35-5-101(a) (collectively, "August 2014 Notices of Sale").

a. The beneficial interest of the BANA Deed of Trust "was last transferred and assigned to [BANA] who is now the holder of said debt."

b. "[Rubin Lublin], having been appointed as Substitute Trustee by Instrument Number 20130604-0056186, recorded in the Register's Office of Davidson County, Tennessee."

c. "[T]he sale is being conducted pursuant to the authority granted by the June 27, 2014, Minute Entry of the United States District Court for the Middle District of Tennessee, Case No. 3:14-cv-01113."

d. "[Rubin Lublin], as Substitute Trustee or its duly appointed agent, by virtue of the power, duty and authority vested and imposed upon said Substitute Trustee will, on August 26, 2014 at 11:00 AM at the Front Entrance of the Historic Courthouse located at 1 Public Square, located in Nashville, Tennessee, proceed to sell at public outcry ..."

e. "The sale of the [Property] shall be subject to all matters shown on any recorded plat."

f. "The right is reserved to adjourn the day of the sale to another day, time, and place certain without further publication, upon announcement at the time and place for the sale set forth above."

g. "[T]he the title [to the Property] is believed to be good."

h. Rubin Lublin is "attempting to collect a debt."

64.    Rubin Lublin claims the Property was duly sold at an August 26, 2014, foreclosure sale – for which Rubin Lublin claims it was the duly appointed substitute trustee of record – and that the foreclosure sale was properly noticed, convened, cried, conducted and concluded ("August sale").

65.    On September 2, 2014, Rubin Lublin recorded a substitute trustee's deed

16

concerning the August sale with the Davidson County Register of Deeds at Instrument No. 20140902-0079780 ("September Trustee's Deed"). (Exhibit H).

66.    Freddie Mac knew or should have known on August 4, 2014 that it had no right to purchase the <u>Note</u> from Bank of America, and that any such transfer/purchase clearly violated Mr. Kantz's Deed of Trust, and exceeded the Substitute Trustee's legal authority.

67.    On August 26, 2014, Rubin Lublin TN, PLLC conducted a foreclosure sale on behalf of Bank of America, an entity that did not own the Property nor the Note. Attorney Bret Chaness was the sale crier and claimed to be crying the sale on behalf of Bank of America.

68.    According to Rubin Lublin's annual filings with the Tennessee Secretary of State's office ("Filed Member Status"), Rubin Lublin had only one member between February 20, 2014, and the date the September Trustee's Deed was recorded. (Exhibit I).

69.    Under penalty of perjury, Rubin Lublin's authorized representative and purported sole member, Rubin Lublin, LLC ("Rubin Lublin GA"), through Rubin Lublin GA's authorized representative and purported member, Victor Kang ("Kang"), signed the September Trustee's Deed. Mr. Kang's "authority" in the March Substitute Trustee's Deed differs from the September 2, 2014 deed created to cover up the earlier fraud perpetrated on Mr. Kantz. (see Exhibit C, in which Mr. Kang *falsely* identified his title and himself as a "Member" of Rubin Lublin TN, PLLC).

70.    In the September Substitute Trustee's Deed Rubin Lublin represents, among other things:

   a. Rubin Lublin was BANA's duly appointed substitute trustee for the August sale.
   b. The Property was sold to BANA for $398,126.15 paid in hand to and acknowledged by Kang ("Purchase Price #2").
   c. BANA was the highest, last and best bid at the August sale ("Winning Bid #2").

17

d. BANA transferred and assigned Winning Bid #2 to the Federal Home Loan Mortgage Corporation ("Freddie Mac") ("Bid Assignment #2"); and,

e. Rubin Lublin transferred and conveyed to Freddie Mac all of Rubin Lublin's right, title and interest in and to the Property.

71. After February 20, 2014, Freddie Mac never conveyed the Property back to the Bank of America.

72. As shown above, the Deed of Trust clear terms <u>only</u> allow Bank of America to <u>sell</u> the Property once it has "invoked the power of sale..." ("If Lender invokes the power of sale, Trustee shall … sell the Property at public…") (Exhibit A). By initiating the foreclosure process Bank of America "invoked the power of sale" on Mr. Kantz's home.


**D. RESPA Violations**

73. Due to the plethora of suspicious actions by Defendants Mr. Kantz began making Qualified Written Requests for information pursuant to the Real Estate Settlement Procedures Act. ("RESPA").

74. On or about June 27 and July 11, 2014, Mr. Kantz made a Qualified Written Requests (under RESPA) to Bank of America for information regarding his loan.

75. On July 18, 2014, Bank of America responded <u>truthfully</u>:

Please note our records reflect that the **subject property was sold** at the foreclosure sale held on February 20, 2014.
(Exhibit F, p. 1, 2nd paragraph) (Bold added).


76. On July 30, 2014, Blank Rome, attorneys for Bank of America responded:

Pursuant to 15 U.S.C. § 1641(f)(2), the current **owner of the note** is the Federal Home Loan Mortgage corporation, which has an address of …. The current servicer of the Loan is Bank of America, which has an address of…
(Exhibit J, p. 2, 3rd paragraph) (bold added).

77. On August 4, 2014, Bank of America responded:

[In accordance with] Section § 1641(f), the current **owner of the note** is:
**Federal Home Loan Mortgage Corporation**
Attn: Consumer Care
8200 Jones Branch Drive
McLean, Virginia 22102

(Exhibit K, p. 1, 3rd paragraph) (bold added).

78.   On September 16, 2014, Blank Rome sent a letter on behalf of Bank of America stating:

… as indicated in the prior response, the **Federal Home Loan Mortgage Corporation was and remains the owner** of the note pursuant to …

(Exhibit L, p. 2, 3rd paragraph) (bold added). And,

As indicated in Bank of America's correspondence to you dated September 4, 2014, the **Federal Home Loan Mortgage is the investor in the Loan, which owns the note** and is the party entitled to payment…

(Exhibit L, p. 2, 4th paragraph) (bold added).

79.   Despite a specific request in his July 11, 2014 letter to Bank of America and Rubin Lublin TN, PLLC and/or Rubin Lublin LLC, neither has provided a copy of any and all assignments of Mr. Kantz Note.

**E.    The Present Litigation.**

80.   On August 14, 2015, Freddie Mac filed a Detainer Warrant to obtain possession of Mr. Kantz's Property in the Metropolitan General Sessions Court in Nashville, Tennessee ("General Sessions Case" or "General Sessions Detainer Warrant").  (DE 1).

81.   This was the first time the issue of **possession** of Mr. Kantz's Property was raised by Freddie Mac and is an entirely new cause of action.

82.   On August 26, 2015, Kantz removed the General Sessions Detainer Warrant to this Court pursuant to 28 U.S.C. §§ 1331, 1441, 1446, and 12 U.S.C. § 1452(f).

83.   On September 24, 2015, Mr. Kantz filed his Answer, Counter-Claim, and Third Party Claim. (DE 9).

84.    On October 16, 2015, the Court allowed FYI to intervene. (Doc. 25).

19

85.     Bank of America was <u>not a party</u> to the *Kantz v. Rubin Lublin TN, PLLC, et al*, Case No 3:14-cv-01113 (M.D. Tenn.).

86.     FYI was <u>not a party</u> to the *Kantz v. Rubin Lublin TN, PLLC, et al*, Case No 3:14-cv-01113 (M.D. Tenn.).

87.     The BANA Note was in default at the time it was purportedly obtained by, assigned and/or transferred to Freddie Mac and/or Rubin Lublin for servicing, collection and/or mortgage foreclosure.

88.     Neither Freddie Mac nor Rubin Lublin originated the BANA Note.

89.     Kantz resides in and is currently in possession of the Property.  Neither Freddie Mac nor BANA has a legitimate claim to possession of the Property.

90.     Once the Property was allegedly sold to Freddie Mac in February, the Deed of Trust was (or should have been pursuant to Tennessee law) released and Bank of America's Substitute Trustee no longer had any authority to take any action with regard to the Property.

91.     Despite the requirement the **Property** be sold, Bank of America claims it sold the **Note** to Freddie Mac.

### COUNT I - DECLARATORY RELIEF

92.     Mr. Kantz incorporates by reference the facts and allegations in the previous paragraphs 1 - 91 as if fully set forth herein.

93.     The Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201 *et seq.*, provides:

(a) In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

94.     Declaratory relief is appropriate and necessary to establish the putative

foreclosure on August 26, 2014 of the Property was unlawful.

95.     Pursuant to the DJA and the Tennessee Declaratory Judgment Act, Tenn. Code Ann. § 29- 14-101 *et seq.*, Mr. Kantz requests a declaratory judgment that Freddie Mac is not entitled to possession of his Property as requested in the General Sessions Detainer Warrant.

96.     Pursuant to the DJA and the Tennessee Declaratory Judgment Act, Tenn. Code Ann. § 29- 14-101 *et seq.*, Mr. Kantz requests a declaratory judgment that the August 26, 2014 foreclosure sale was unlawful and did not extinguish otherwise impaired or impeded any third-party's rights in and to the Property.

97.     Mr. Kantz prays the Court determine and hold Freddie Mac has no standing or authority to prosecute the Davidson County General Sessions Detainer Warrant against him.

98.     Mr. Kantz prays the Court determine and hold Bank of America had no right to foreclose on Mr. Kantz's Note on August 26, 2014.

99.     Mr. Kantz prays the Court determine and hold that the August 2014 Notice of Foreclosure incorrectly identified Bank of America as the holder of the Note.

100.     Mr. Kantz prays the Court determine and hold that Bank of America, and its agent Rubin Lublin TN, PLLC, allegedly acting as Substitute Trustee, did not and could not have properly conducted the August 26, 2014 sale, and therefore the sale is invalid due to the numerous breaches of the Deed of Trust.

101.     Mr. Kantz prays that the Court determine and hold that the August 26, 2014 foreclosure sale was invalid and return his residence to him.

102.     Mr. Kantz prays that the Court determine and hold that Bank of America and Rubin Lublin TN, PLLC intentionally and willfully misrepresented to Mr. Kantz, the public at large, and the Court that it had the authority and to conduct the August 26, 2014 foreclosure sale, and then misrepresented that the same was in fact properly cried and conducted.

103.     Mr. Kantz prays that the Court determine and hold that Freddie Mac intentionally and willfully misrepresented to Mr. Kantz and the public that it had the authority to purchase the property and that it had made such a purchase.

104.     Mr. Kantz requests actual damages in the amount of the fair market value of his residence's equity as of August 26, 2014 ($160,000.00), additional compensatory damages as may be proven at trial, and reasonable attorney's fees and costs as permitted under the Deed of Trust and relevant state and federal law.

## COUNT II - FRAUD IN THE AUGUST 26, 2014 FORECLOSURE SALE
### (Wrongful Foreclosure)

105.     Mr. Kantz incorporates by reference the facts and allegations in paragraphs 1 – 104 as if fully set forth herein.

106.     Freddie Mac, Bank of America and Rubin Lublin committed intentional and willful fraud by conducting a foreclosure sale pursuant to a misleading sale notice.  Their failure to comply with the Deed of Trust's requirements, including, but not limited to, proper notice and crying of the sale, pre- and post-sale deception concerning the alleged sale, and the immediate sale/transfer of the Note to Freddie Mac (an insider) at a prices grossly below its non-fair market value, but at a profit for itself.

107.     The fraudulent acts are referenced above and include the following:

a)   Freddie Mac taking any actions while under the conservator of FHLA in violation of 12 U.S.C. 4617(b)(2)(B)(iii) & 12 U.S.C. 4617(b)(2)( (A)(i).

b)   The Defendants' demand that Mr. Kantz pay of the entire indebtedness when knew and or should have known that it did not and could not have owned the Note under the specific terms of the Deed of Trust.

c)   The Defendants' demand that Mr. Kantz pay $460,000.00+ for a Note it allegedly purchased in February 2014 for approximately $420,000, and thus attempting to make a $40,000.00+ profit on its and Bank of America's intentional fraud.

d) The Defendants' deception to the Court at the June 27, 2014 Case Management Conference in which it offered to sell (with no intent to perform) the Note at the price it paid at the February 20, 2014 sale.

e) Freddie Mac's in-court deception at the June 27, 2014 Case Management Conference when it implied that it was the <u>Property owner</u>, when in fact it later claimed to be the <u>Note holder</u>.

f) The Defendants' defraud Mr. Kantz and the public when it published the August 2014 Notice of Sale which failed to properly identify the Note holder and the authority under which the sale was permitted.

g) The Defendants' defraud Mr. Kantz and the public when it published the August 2014 Notice of Sale which failed to properly identify all third party interest in the Property.

h) Not having a chain of title that would allow the foreclosing party to actually conduct the August 2014 foreclosure sale.

108.    Mr. Kantz requests actual damages of $160,000.00, statutory and punitive damages and reasonable attorney's fees and costs as permitted under Tennessee and federal law.

## COUNT III - BREACH OF CONTRACT

109.    Mr. Kantz incorporates by reference the facts and allegations in paragraphs 1 - 108 as if fully set forth herein.

110.    Pursuant to the March 6, 2014 Substitute Trustee's Deed, Freddie Mac was the record owner of the property at the time Bank of America and Rubin Lublin allegedly sold the same.  Freddie Mac also claims it was the owner of the Promissory Note and Deed of Trust in August 2014.

111.    In August 2014, Freddie Mac, itself and through its agent, Rubin, intentionally and willfully breached the Deed of Trust by failing to comply with the Deed of Trust's clear and exact "power of sale" provisions.  These violations in August 2014, include but not limited to, improper notice, improper crying of the sale, refusal at the sale to identify the true Note holder, and post-sale misrepresentation concerning the sale.

112.    Despite instructions the opening bid was to be $398,126.15, and a required closing bid of $461,259.51, Bank of America "sold" the property to Freddie Mac for $398,126.15.

113.    The Defendants' actions violate the good faith and fair dealing requirement found in all Tennessee contracts.

114.    Mr. Kantz requests actual damages of $160,000.00, punitive damages, return of his residence, and reasonable attorney's fees and costs as permitted under state and federal law.

## COUNT IV -  VIOLATION OF TENNESSEE CODE ANNOTATED § 47-18-104(b)(39) (The Tennessee Consumer Protection Act)

115.    Mr. Kantz incorporates by reference the facts and allegations in paragraphs 1 - 114 as if fully set forth herein.

**A.     Tennessee Consumer Protection Act**

116.    Tennessee Code Annotated § 47-18-104, commonly known as the Tennessee Consumer Protection Act, makes it a deceptive practice or act to:

(a) Unfair or deceptive acts or practices affecting the conduct of any trade or commerce constitute unlawful acts or practices and are Class B misdemeanors.

(b) The following unfair or deceptive acts or practices affecting the conduct of any trade or commerce are declared to be unlawful and in violation of this part:

…

**(39) Representing that a person, or such person's agent, authorized designee or delegee for hire, has conducted a foreclosure on real property, when such person knew or should have known that a foreclosure was not actually conducted on the real property.**

117.    Freddie Mac and Bank of America, and through their agent(s), Rubin Lublin misrepresented to Mr. Kantz and to the public at large it "conducted a foreclosure on real

property" when it had actual and constructive knowledge it had no authority to conduct a sale on behalf of Bank of America on August 26, 2014.

118.    Freddie Mac, as the alleged holder of the Note, misrepresented to Mr. Kantz and the public at large the actual holder of the Note when it conducted a foreclosure sale on August 26, 2014. Freddie Mac further intentionally and willfully allowed a Notice of Sale to be published which it knew contained materially misleading information concerning the debt owed and the Note holder.

119.    Freddie Mac actions in not conducting the foreclosure sale and then affirmatively misrepresenting the same, are *per se* violations of the Tennessee Consumer Protection Act.

120.    Bank of America itself, and through its agents, Rubin Lublin's actions in continuing to affirmatively misrepresent to Mr. Kantz, his counsel and the Court are *per se* violations of the Tennessee Consumer Protection Act.

121.    Bank of America itself, and through its agent, Rubin Lublin actions in conducting the August 26, 2014 foreclosure sale and continuing to affirmatively misrepresent to Mr. Kantz, his counsel and the Court material facts concerning the sale are criminal acts under Tennessee law.

122.    Mr. Kantz prays that costs and attorney's fees be awarded under the Tennessee Consumer Protection Act.

123.    Mr. Kantz further requests actual damages of $160,000.00, and punitive damages as permitted under the Tennessee Consumer Protection Act and/or the trebling of his compensatory damages, and reasonable attorney's fees and costs as permitted under the Tennessee Consumer Protection Act.

**COUNT V -  VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**

124.    Mr. Kantz incorporates by reference the facts and allegations in paragraphs 1 - 123 if fully set forth herein.

## A.    The FDCPA

125.    The Fair Debt Collection Practices Act's stated purpose is to prevent abusive, misleading, and deceptive debt collection practices," 15 U.S.C. 1692(a).

126.    The FDCPA prohibits the use of any conduct the natural consequence of which is to harass, oppress, or abuse any person, 15 U.S.C. § 1692d, any false, deceptive or misleading representations or means, 15 U.S.C. § 1692e, and any unfair or unconscionable means, 15 U.S.C. § 1692f, to collect or attempt to collect any debt. See also Federal Trade Commission, *Staff Commentary on the FDCPA*, §§ 806, 807(5), 808. The FDCPA also requires a debt collector to provide a validation notice. 15 U.S.C. § 1692g.

127.    The FDCPA targets a wide array of unfair, harassing, deceptive, confusing, and unscrupulous collection practices by debt collectors. It bans not only outright falsehoods, but also any 'false, deceptive, or misleading' debt-collection practices. The FDCPA specifically outlaws "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." And while "Congress did not turn every violation of state law into a violation of the [FDCPA] . . . [t]he legality of the action taken under state law may be relevant."

128.    Any debt collector who fails to comply with any provision of the FDCPA is liable to the person harmed.

129.    Freddie Mac, Rubin Lublin and Bank of America are "debt collectors" under the FDCPA.

130.    Mr. Kantz is a "consumer" who became was "indebted or allegedly indebted" to Bank of America when he borrowed money to purchase a home to use as his personal residence. (Exhibit A). 15 U.S.C. 1692a(3).

131.    Under the FDCPA a "debt" is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). Kantz incurred the BANA Promissory Note ("BANA Mortgage Loan"), secured by the BANA Deed of Trust, primarily for personal, family, and household purposes. Therefore, under the FDPCA, Mr. Kantz is a consumer under the FDCPA and his obligation is a "consumer debt."

132.    The term "debt collector" is defined to include "any person ... who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Under the FDCPA (a) the ultimate purpose of mortgage foreclosure is the payment of money and/or to obtain payment of a debt; (b) if a purpose of an activity taken in relation to a debt is to obtain payment of the debt the activity is properly considered debt collection; and (c) mortgage foreclosure is debt collection, all three activities in which Freddie Mac and Rubin Lublin engage.

133.    Freddie Mac and Rubin Lublin's mortgage foreclosure and debt collection activities concern a debt, i.e., the Bank of America mortgage loan, which was in default at the time it was consigned, sold or otherwise transferred to Freddie Mac and Rubin Lublin for servicing and/or collection. Freddie Mac and Rubin Lublin are persons who regularly collect or attempt to collect debts owed or due or asserted to be owed or due another. Freddie Mac and Rubin Lublin are persons who regularly enforce security interests.

134.    Under the FDCPA a "communication" is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). Unlike other provisions of the FDCPA, 15 U.S.C. § 1692f does not require a "communication." All written and oral communications and representations of Freddie Mac and

Rubin Lublin as described herein are communications under the FDCPA.

**B. The Defendants' FDCPA violations**

135.    Prior to the February and August foreclosure sales, Freddie Mac and Rubin Lublin had actual and record notice of Bank of America's Deed of Trust, the deeds of trust of third party creditors, the February 2014 Notices of Sale, the FHFA Conservatorship, the March 2014 Substitute Trustee's Deed, and the August 2014 Notices of Sale and actual notice of the secured debts of third parties.

136.    Prior to the recordation of February and August Substitute Trustees' Deeds Freddie Mac and Rubin Lublin had actual and record notice of the BANA Deed of Trust, the FYI Deed of Trust, the Substitution of Trustee, the February and August 2014 Notices of Sale, and the FHFA Conservatorship, the BANA Note, the FYI Note, and the FYI Assignment and Lien.

137.    Freddie Mac and/or Bank of America, and through its agents and attorneys, Blank Rome and Rubin Lublin TN, PLLC, made intentional and willful misrepresentations intentionally created confusion related to ownership and existence of the mortgage, and the collection of his consumer debt to Mr. Kantz in violation the FDCPA, including but not limited to independent claims under § 1692(d), § 1692(e) and § 1692(f). These misrepresentations have been outlined in detail above and are incorporated by reference. These misrepresentations include:

   a) Misrepresenting the August 2014 foreclosure sale was properly advertised, held, cried, and concluded, as required under the Deed of Trust and Tennessee law.
   b) Misrepresenting at the August 2014 foreclosure sale that Bank of America was the holder of Mr. Kantz's mortgage.
   c) Misrepresenting at the August 2014 foreclosure sale that Rubin Lublin was still the Substitute Trustee and that it had authority to conduct the August sale.
   d) Misrepresenting at the August 2014 foreclosure sale that FHMLC was the buyer of Bank of America's "right title and interest in and to the Property" (which includes the mortgage) at the August sale.

e)  The September Substitute Trustee's Deed, recorded to memorialize the August 2014 foreclosure sale, misrepresents that Bank of America was the owner of the mortgage, that it demanded that the Property be advertised and sold – despite not having a valid security interest in the Property.

f)  The September Substitute Trustee's Deed misrepresents that Rubin Lublin was "dully appointed" to act as the Substitute Trustee.  This cannot be possible as the Substitute Trustee's authority would have terminated upon the conclusion of its duties after the February 20, 2014 foreclosure sale and transfer of the Property. (Tenn. Code Ann. § 35-5-114(b)(1) provides that a substitute trustee is appointed by filing a substitution of trustee with the register of deeds of the county in which the property is situated).

g)  The September Substitute Trustee's Deed misrepresents that Rubin Lublin caused to be published the sale notice as required under Tenn. Code Ann. § 35-5-104 and the Deed of Trust.  This is not possible after the February 20, 2014 sale.

h)  The September Substitute Trustee's Deed misrepresents that the Property would be sold on August 26, 2014 pursuant to Tenn. Code Ann. § 35-5-104 and the Deed of Trust.  This is not possible after the February 20, 2014 sale.

i)  The September Substitute Trustee's Deed misrepresents that Rubin Lublin had the authority to appear and cry the sale on August 26, 2014. This is not possible after the February 20, 2014 sale.

j)  The September Substitute Trustee's Deed misrepresents that Bank of America owned the mortgage.  This is not possible after the February 20, 2014 sale.

k)  The September Substitute Trustee's Deed misrepresents that Rubin Lublin had the authority to conduct the sale, and after receiving bids, sell the Property in behalf of Bank of America. had the authority to appear and cry the sale on August 26, 2014. This is not possible after the February 20, 2014 sale.

l)  The September Substitute Trustee's Deed misrepresents that Rubin Lublin had the authority to convey the Property to Freddie Mac.  This is not possible after the February 20, 2014 sale.

m)  The September Substitute Trustee's Deed misrepresents that Victor Kang, the signer of the September 2014 Substitute Trustee's Deed, is a member of Rubin Lublin, LLC, and authorized to execute the September 2014 Substitute Trustee's Deed. Victor Kang signed the verification under penalty of perjury. This is confusing and false, inasmuch as the March 2014 Substitute Trustee's Deed, also signed by Victor Kang under penalty of perjury, identifies Victor Kang as a member of Rubin Lublin TN, PLLC, a different legal entity. and,

n)  The Deed of Trust, section 18, allows the foreclosing parties to sell the Property and further provides, section 23, that "[u]pon payment of all sums secured by [the BANA Deed of Trust]" the Deed of Trust shall be released. The September 2014 Substitute Trustee's Deed represents that Rubin Lublin, after opening the floor for competitive bids, sold the Property to BANA at the price of Three Hundred Ninety-Eight Thousand One Hundred Twenty-Six and 15/100 ($398,126.15). This is not possible after the February 20, 2014 sale.

29

138.    The debt collection practices listed above and incorporated by reference were (a) confusing, false, deceptive and misleading in violation of 15 U.S.C. § 1692e and (b) unfair and unconscionable in violation of 15 U.S.C. § 1692f.

139.    In addition, at the time the fraudulent February and August 2014 foreclosure sales was conducted, Blank Rome and Rubin Lublin TN, PLLC were Bank of America's attorneys, and attempting to collect Mr. Kantz's consumer debt.

140.    At all times Blank Rome, Freddie Mac and Rubin Lublin TN, PLLC were acting as debt collectors on behalf of Bank of America as defined under 15 U.S.C.A. § 1692(a) et seq..

141.    Pursuant to the Deed of Trust's clear terms, after invoking the power of sale provision of Paragraph 22, Bank of America had only the legal authority to sell the Property, which it allegedly did to Freddie Mac in February 2014. (Exhibit A):

142.    After the February 20, 2014 foreclosure sale, Bank of America (allegedly) received $398,215.51 from Freddie Mac which should have been applied to the Note balance pursuant to the Deed of Trust.

143.    Under Tennessee law, upon payment, Bank of America would have had to release its Deed of Trust to convey clear title to Freddie Mac.  This would have left Bank of America with an unsecured Note, the balance of which would have been decreased by $398,215.51.

144.    Since Freddie Mac could never have owned the Note pursuant to the Deed of Trust, after February 20, 2014, it was acting as Bank of America's agent and as a "debt collector" when it attempted to collect Mr. Kantz's mortgage by demanded he pay "the entire indebtedness in full."

145.    Although Freddie Mac, Bank of America, Blank Rome and Rubin Lublin TN, PLLC communicated with Mr. Kantz concerning his debt, neither sent the statutorily required written notice under 15 U.S.C. 1692(g) to allow Mr. Kantz to dispute the validity of the debt.

146.    On June 27, 2014 and July 11 2014, Mr. Kantz sent letters disputing the debt to Freddie Mac and Bank of America and demanded information concerning the authority to conduct the August foreclosure sale and the Note holder's identity.  The July 11, 2014 letter states in part:

> … [Mr. Kantz and counsel] we are in dispute as to the identity of the true owner of this debt (if any), and your authority and capacity (if any) to collect on behalf of the same. We are also in dispute about the proper application of payments from the debtors to interest, principal, escrow advances and expenses (in that order of priority as provided for in the loan instruments); about your use of automatically triggered property inspections and broker price opinion charges and fees based on undisclosed accounting for purported arrears; and about legal fees and expenses that have been attached to this account but that have not been otherwise explained or established to the borrower. …

(Exhibit M, p. 1, 3rd paragraph).

Despite this request, Freddie Mac and Bank of America refused to verify the debt at issue or provide this and other requested information.  At no time did Bank of America ever produce an assignment or other document showing the alleged transfer of the Note to Freddie Mac.

Pursuant to the FDCPA, upon a request for verification a debt collector must cease collection efforts until such time as the debt was verified.  To the extent the Freddie Mac, Bank of America (and its attorneys Blank Rome and Rubin Lublin TN, PLLC) responded they provided false, incorrect, and misleading information concerning who was the Note holder and the Note's current balance.

147.    In response to these requests Bank of America responded by letter dated July 18, 2014 that despite its "records reflect[ing] that the property was sold at the foreclosure sale held on February 20, 2014" that Mr. Kantz's balance was **$365,736.09** as of April 24, 2014. (Exhibit F).  Bank of America, and its attorneys, misrepresented debt by failing to give Mr. Kantz credit for the $398,125.51 it received from Freddie Mac at the foreclosure sale.  This misrepresentation of the balance violates the FDCPA.

148.     On July 30, 2014, Bank of America's attorneys, Blank Rome, sent a letter contradicting the prior letter's claim that the property had been sold.  Blank Rome claimed Freddie Mac, not Bank of America, was the current Note owner. (Exhibit J, p. 2, 3rd paragraph). Despite earlier "records reflect[ing] that the property was sold at the foreclosure sale held on February 20, 2014" it claimed balance was $365,736.09 as of April 24, 2014. (Exhibit F). This letter further detailed a dizzying array of charges and credits starting in April 2013 and continuing well past the February 20, 2014 sale.  The failure to give Mr. Kantz a clear and accurate loan balance, and the failure to give credit for Freddie Mac's the $398,126.51 payment, violates the FDCPA.

149.     In addition, Bank of America charged Mr. Kantz for securing a "force-placed" insurance policy on February 24, 2014, effective February 21, 2014.  However, on February 20, 2014, Bank of America allegedly sold the Property and no longer had an "insurable interest" in the same.  (Blank Rome's letter even contains a copy of the March 6, 2014 Substitute Trustee's Deed showing the clear and unequivocal sale to Freddie Mac (Exhibit N, p. 2).  The charging of post-foreclosure sale insurance premiums is fraudulent, a breach of the deed of trust, and violates the FDCPA, RESPA and the Truth in Lending Act.

150.     On August 4, 2014, Bank of America sent a letter contradicting its prior letter's claim the Property had been sold, and now claimed that Freddie Mac was now the current Note owner. (Exhibit K).  Bank of America claimed balance was $365,736.09 as of April 24, 2014, two (2) months after the alleged sale.  Bank of America misrepresented the debt by failing to give Mr. Kantz credit for the $398,125.51 that it received from Freddie Mac as evidenced by the March 6, 2014 Substitute Trustee's Deed. (Exhibit C).  This misrepresentation of the balance violates the FDCPA.

151.    None of the above letters gave Mr. Kantz a "current balance" that was less than three (3) months out of date, and none gave him a pay off balance to allow him to pay off the indebtedness.  These material misrepresentations violated the FDCPA.

152.    None of these letters explain why Bank of America allegedly made a credit bid of $398,215.51 on February 20, 2014 on a Note in which its admitted balance was only $365,736.09, nearly $33,000.000 less, as of April 24, 2014.   The demanding of an extra $33,000.00 at the February 20, 2014 foreclosure sale is a material misrepresentations violating the FDCP and RESPA.

153.    On September 4, 2014, Bank of America sent another letter which failed to advise Mr. Kantz of his current balance. (Exhibit O).  This letter also identified Freddie Mac as the "investor" or Note holder.  These material deceptions violated the FDCPA and RESPA.

154.    On September 16, 2014, Bank of America's counsel sent yet another letter which failed to advise Mr. Kantz of his current balance. (Exhibit L). This letter also identified Freddie Mac as the "investor" or Note holder.  These material misrepresentations violated the FDCPA.

155.    The sending of letters to Mr. Kantz that misstated the debt due are *per se* violations of the FDCPA.

156.    The sending of letters to Mr. Kantz that misstated the holder of the note as Freddie Mac are *per se* violations of the FDCPA.

157.    The above debt collection practices used by Foreclosing Parties with respect to the August sale were (a) confusing, false, deceptive and misleading in violation of 15 U.S.C. § 1692e and (b) unfair and unconscionable in violation of 15 U.S.C. § 1692f.

**C. Damages**

158.    The FDCPA is a strict liability statute.

159.    When engaging in the acts as set forth hereinabove, the Defendants and their

33

representatives, and each of them, acted maliciously, i.e., with ill will, hatred and/or spite. The Defendants' conduct and actions also constitute such a reckless disregard for the rights of others that a conscious indifference to consequences can be implied.

160.    The FDCPA allows recovery of statutory or actual damages for violations. (15 U.S.C. 1692e. Under the Act statutory damages are recoverable for violations, whether or not actual damages are proven.

161.    Mr. Kantz has actual damages of $160,000.00, statutory damages of $1,000 per violation, and punitive damages and attorney's fees as permitted under the FDCPA.

## COUNT VI - VIOLATIONS OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT AND THE TRUTH IN LENDING ACT (15 U.S.C. §1601 *et seq.*)

162.    Mr. Kantz incorporates by reference the facts and allegations in paragraphs 1 - 161 as if fully set forth herein.

163.    As shown by the numerous letters cited above and incorporated by reference, Bank of America (and its agents/attorneys Blank Rome and Rubin Lublin) as servicer has misrepresented the Note's owner of as being Freddie Mac despite actual knowledge that the Deed of Trust <u>required</u> the Property to be sold, the Property was in fact sold, and it prepared and recorded a Substitute Trustee's Deed affirming the fact the Property was sold.

164.    Despite these actions, Bank of America and Freddie Mac (and their agents/attorneys Blank Rome, and/or Rubin Lublin) conspired together post-foreclosure sale to cover up the earlier sham sale, and the immediate transfer of the Property.  A transaction by which Bank of America profited more than $22,000.00, and Freddie Mac profited over $40,000 – all at Mr. Kantz's expense.

165.    After the February foreclosure sale, Bank of America as servicer orchestrated a sham "assignment" from Bank of America to Freddie Mac to cover up its illegal profit.

166.    The Defendants have refused to provide proof that showing an actual assignment of the BANA Note to Freddie Mac.

167.    Bank of America as the owner pre- and post- foreclosure sale of the Note, used Rubin Lublin, and Freddie Mac as its servicing agents to perpetrate this fraud on Mr. Kantz and the Court.

168.    Mr. Kantz further requests actual damages of $160,000.00, statutory damages of up to $ 2,000 per violation, and a penalty of $500,000.00 or 1% of Defendants' net worth, as provided by 15 U.S.C. § 1640(a)(1)-(2), and attorney's fees and costs as permitted.

## COUNT VII – INTENTIONAL MISREPRESENTATION. FADULENT CONCEALMENT, AND CONVERSION OF PROPERTY

169.    Mr. Kantz incorporates by reference the facts and allegations in paragraphs 1 - 168 as if fully set forth herein.

170.    At all relevant times herein, Rubin Lublin was the agent, principal and/or authorized representative of FHFA, Freddie Mac and/or BANA and acted within the scope of such relationships and on behalf of and with the approval, consent and/or encouragement of FHFA, Freddie Mac and/or BANA.

171.    On February 19, 2014, prior to the February foreclosure sale, Mr. Chaness informed FYI he is an attorney employed by Rubin Lublin and that he was BANA's attorney. The debt collection activities as described herein, including mortgage loan foreclosure, were within the scope of one or more of such agency and/or sub-agency relationships.

172.    Tenn. Code Ann. § 35-5-107 provides that any officer, or other person making a foreclosure sale, proceed to sell without pursuing the provisions of Tenn. Code Ann. § 35-5-101 *et seq*. commits a Class C misdemeanor and is liable to the party injured by the noncompliance, for all damages resulting from the failure.

173.    Certain of Rubin Lublin's representations, as set forth hereinabove, were false.

Specifically, but not limited to:

a.  As to ¶ 64(a) above, the beneficial interest of the BANA Deed of Trust was not last transferred and assigned to BANA.

b.  As to ¶ 64(a) above, BANA was not now the holder of the BANA Note.

c.  As to ¶ 64(c) above, Sale #2 was not conducted pursuant to the authority granted by the June 27, 2014, Minute Entry.

d.  As to ¶ 64(d) above, Rubin Lublin was not BANA's duly appointed substitute trustee for Sale #2.

e.  As to ¶ 64(d) above, Rubin Lublin did not, as substitute trustee or by a duly appointed agent, sell the Property at public outcry on August 26, 2014.

f.  As to ¶ 64(g) above, Rubin Lublin knew the title to the Property was not good.

g.  As to ¶ 70 above, Rubin Lublin GA was not a member of Rubin Lublin.

h.  As to ¶ 71(a) above, Rubin Lublin was not BANA's duly appointed substitute trustee at the August sale.

i.  As to ¶ 71(b) above, the Property was not sold to BANA for $398,126.15 paid in hand to and acknowledged by Kang.

j.  As to ¶ 71(c) above, BANA was not the highest, last and best bid at the August sale ("Winning Bid #2").

k.  As to ¶ 71(d) above, BANA did not transfer and assign Winning Bid #2 to Freddie Mac.

174.    The June 27, 2014, "Minute Entry" referred to in paragraph 56 above did not effect in and of itself a transfer of the Property, the BANA Deed of Trust or the BANA Note. After the June 27, 2015, no Defendant ever transferred the property, Note or Deed of Trust.

175.    As per the March Trustee's Deed, at all times between the recordation of the deed and the date of the first of the August 2014 Notices of Sale BANA claimed not to be the owner of the Property.

176.    As per the March Trustee's Deed, at all times between the recordation of the deed and the date of the first of the August 2014 Notices of Sale BANA claimed not to be the owner and holder of the BANA Note.

177.     As per the March Trustee's Deed, at all times between the recordation of the deed and the date of the first of the August 2014 Notices of Sale, Freddie Mac claimed to be the owner of the Property.

178.     As per the March Trustee's Deed, at all times between the recordation of the deed and the date of the first of the August 2014 Notices of Sale, Freddie Mac claimed to be the owner and holder of the BANA Note.

179.     As per the March Trustee's Deed, at all times between the recordation of the March Deed and the date of the first of the August 2014 Notices of Sale, Rubin Lublin claimed not to be the duly appointed substitute trustee of record for the August sale.

180.     As per the March Trustee's Deed, at all times between the recordation of the March Deed and the date of the first of the August 2014 Notices of Sale, Rubin Lublin claimed to have no right, title, or interest in or to the Property.

181.     As per the August 2014 Notices of Sale, at all times between the date of the first of the August 2014 Notices of Sale and the sale, BANA claimed to be the owner of the Property.

182.     As per the August 2014 Notices of Sale, at all times between the date of the first of the August 2014 Notices of Sale and the sale, BANA claimed to be the owner and holder of the BANA Note.

183.     As per the August 2014 Notices of Sale, at all times between the date of the first of the August 2014 Notices of Sale and the sale, Freddie Mac claimed not to be the owner of the Property.

184.     As per the August 2014 Notices of Sale, at all times between the date of the first of the August 2014 Notices of Sale and the sale, Freddie Mac claimed not to be the owner and holder of the BANA Note.

185.     As per the August 2014 Notices of Sale, at all times between the date of the first

of the August 2014 Notices of Sale and the sale, Rubin Lublin claimed to be the duly appointed substitute trustee of record for the August sale.

186.     As per the August 2014 Notices of Sale, at all times between the date of the first of the August 2014 Notices of Sale and the August sale, Rubin Lublin claimed to have a right, title, or interest in or to the Property.

187.     As per the September Trustee's Deed, by virtue of the August sale BANA claimed not to be the owner of the Property.

188.     As per the September Trustee's Deed, by virtue of the August sale BANA claimed not to be the owner and holder of the BANA Note.

189.     As per the September Trustee's Deed, by virtue of the August sale Freddie Mac claimed to be the owner of the Property.

190.     As per the September Trustee's Deed, by virtue of the August sale Freddie Mac claimed to be the owner and holder of the BANA Note.

191.     As per the September Trustee's Deed, by virtue of the August sale Rubin Lublin claimed not to be the duly appointed substitute trustee of record for the August sale.

192.     As per the September Trustee's Deed, by virtue of the August sale Rubin Lublin claimed to have no right, title, or interest in or to the Property.

193.     Mr. Kantz was an intended beneficiary of the BANA Deed of Trust, the actions taken thereunder and pursuant thereto, and Tennessee law including, but not limited to, Tenn. Code Ann. § 35-5-101 *et seq*. with respect to the February and August sales.

194.     Rubin Lublin, Freddie Mac and BANA's (collectively, "Foreclosing Parties") had or were chargeable with full knowledge of the facts set forth herein and are estopped to occupy inconsistent positions or to take positions in regard to the February 2014 Notices of Sale, the February foreclosure sale, Trustee's March Trustee's Deed, the August 2014 Notices of Sale, the

August foreclosure sale, and/or the September Trustee's Deed which are directly contrary to, or inconsistent with, ones previously assumed by them and where FYI is or will be prejudiced by Foreclosing Parties' actions.

195.    Under the discovery rule and equitable tolling principles pursuant to the fraudulent- concealment doctrine, Foreclosing Parties' false representations and concealments of material fact as referenced above toll, up to November 1, 2014, at the earliest, the running of any and all applicable statutes of limitation including, but not limited to, those any Foreclosing Party may claim is applicable under the FDCPA and/or any Tennessee statute.

196.    Foreclosing Parties' false representations and concealments of material fact as set forth hereinabove were willful and intentional and intended to misrepresent and conceal and did conceal from FYI Foreclosing Parties' unlawful March 2014 conversion of the Property, the extinguishment of FYI's security and real property interests therein, and the events surrounding and related to both foreclosure sales and to prevent FYI's discovery thereof.   Mr. Kantz was harmed by the harm to FYI Investments as he is now in default under the oblation due to the striping of collateral from his loan.

197.    At the time Foreclosing Parties made said representations, promises, assurances and concealments they knew or should have known that such representations, promises, assurances and/or concealments were false, deceptive, misleading, and/or unknown to FYI. Foreclosing Parties' fraudulent intent is evidenced by their unsubstantiated, false, deceptive, misleading and inconsistent positions regarding the ownership, servicing and provenance of the Property, the BANA Deed of Trust, the BANA Note, Rubin Lublin's role as substitute trustee, Foreclosing Parties' right to foreclose, and their intentional and purposeful concealment of their underlying conduct.

198.    FYI justifiably relied to its detriment upon Foreclosing Parties' positions

regarding the ownership, servicing and provenance of the Property, the BANA Deed of Trust, the BANA Note, Rubin Lublin's role as substitute trustee, and Foreclosing Parties' right to foreclose.

199.     Foreclosing Parties' wrongful acts as alleged herein for fraud, constructive fraud, concealment, promissory fraud, intentional misrepresentations, and negligent misrepresentations have caused damage to FYI, which has directly harmed Mr. Kantz.

200.     When engaging in the acts as set forth hereinabove, Foreclosing Parties and their representatives, and each of them, acted maliciously, i.e., in bad faith and with ill will, hatred and/or spite. Foreclosing Parties' conduct and actions also constitute such a reckless disregard for the rights of others and a reckless disregard as to whether their statements are false such that a conscious indifference to consequences can be implied.

201.     Foreclosing Parties' unlawful and wrongful acts as alleged herein have caused and are causing damage to FYI and Mr. Kantz. As a direct and proximate result of the aforementioned acts, FYI has suffered compensatory and consequential damages of at least $50,330.87 plus interest, costs and attorney's fees, all of which have harmed Mr. Kantz. Additionally, Mr. Kantz is entitled to an award of exemplary and punitive damages in the maximum amount allowed by law as necessary to punish and deter Foreclosing Parties and others similarly situated and/or acting in concert with them from such future fraudulent, unfair, unlawful, and bad faith conduct.

## COUNT VIII - CONSPIRACY

202.     Mr. Kantz incorporates by reference the facts and allegations in paragraphs 1 – 201 as if fully set forth herein.

203.     The facts and allegations above show the Defendants acted together as an association of entities acting in their own selfish interests, and that they acted together to

accomplish by concert an unlawful purpose and/or a lawful purpose not in itself unlawful by unlawful means. as an association of entities acting in their own selfish interests.

204. The Defendant's conspired with their attorneys and agents, Rubin Lublin and Blank One, to provide false responses to RESPA allowed Qualified Written Requests to create the false impression that Mr. Kantz note had been sold with actual knowledge that this was not permitted under the Deed of Trust.

205. The Defendants conspired to create phony Note account balances, both by making improper charges and failing to give Mr. Kantz credit for payments made, for the purpose of demanding more than he owed to prevent him from repurchasing his home, and for the purpose of profitably reselling his home for which they would not have to give him credit.

206. The Defendants conspired to provide false, insufficient and conflicting responses to Mr. Kantz's RESPA allowed Qualified Written Requests. These false statements include misrepresentations concerning the Note's holder/investor, continued refusal to identify the *alleged* February foreclosure sale crier, intentionally and willfully misrepresenting the Note's balance, the intentional addition of improper post-sale charges.

207. The Defendants conspired to conduct a mis-advertised August 26, 2014 foreclosure sale to prevent "interested parties" and third parties from participating in the sale so that the Note holder could purchase the Property at a discount and resell the same at a profit.

208. The Defendants also conspired to engage in the above acts, violating Tennessee and federal law as outlined herein, which include a) Fraud; b) Breach of Contract; c) Wrongful Foreclosure; d) Violating the Tennessee Consumer Protection Act; e) Violating the Fair Debt Collection Practices Act; and, f) Violations of the Real Estate Settlement Procedures Act and the Truth in Lending Act.

209. Mr. Kantz has been damaged as shown in the counts above and hereby demands compensatory, statutory, and punitive damages, and reasonable attorney's fees and costs.

## DEMAND FOR JURY TRIAL

210. Mr. Kantz hereby requests a jury trial for all issues triable by a jury.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Mr. Kantz prays for the following relief:

1. That Mr. Kantz's affirmative defense of wrongful foreclosure defeat Freddie Mac's claim for possession and its Detainer Warrant for the same be denied and dismissed;

2. That Mr. Kantz be awarded a judgment be entered in his favor as to each and every claim in his Amended Complaint;

3. For an Order declaring the Defendants' conduct related to the August 26, 2104 foreclosure sale was fraudulent, and award compensatory, statutory, and punitive damages, as well as attorney's fees and costs as allowed by law;

4. For an Order awarding compensatory damages for breach of contract in the amount of $160,000.00, or the amount determined at trial;

5. For an Order requiring Mr. Kantz's home be re-conveyed to him;

6. For an Order declaring the Defendants' conduct violated the Tennessee Consumer Protection Act and award compensatory damages in the amount of $160,000.00 or as determined at trial, punitive damages or treble damages, and reasonable attorney's fees and costs;

7. For an Order declaring the Defendants' conduct violated the Fair Debt Collection Practices Act, including but not limited to independent claims under § 1692(d) - § 1692(f), and award compensatory damages in the amount of $160,000.00 or as determined at trial, statutory

damages of $1,000 per violation, punitive damages, and reasonable attorney's fees and costs;

8.      For an Order declaring the Defendants' conduct violated the Real Estate Settlement Procedures Act and the Truth in Lending Act and award compensatory damages in the amount of $10,000.00 or as determined at trial, statutory damages of up to $2,000 per violation, punitive damages, and reasonable attorney's fees and costs as allowed by the Act;

9.      For an Order declaring the Defendants conspired to cause harm to Mr. Kantz and award the above-referenced damages jointly and severally against the Defendants; and,

10.     For whatever relief is equitable and just.

Respectfully submitted:

___/s/_____ James D. R. Roberts, Jr._____
Roberts & Associates, Attorneys at Law
James D. R. Roberts, Jr., #017537
1700 Hayes Street, Suite 201
P. O. Box 331606
Nashville, Tennessee 37203
(615) 242-2002 office
(615) 242-2042 facsimile
Attorneys for William E. Kantz, Jr.
Jim.Roberts@RobertsandAssociatesLaw.com

**Certificate of Service**

I certify a copy of this Amended Answer and Counter-Claim has been served on the following via the Court's ECF to:


H. Buckley Cole
Fifth Third Center
424 Church Street, Suite 2950
Nashville, Tennessee 37219

Randall S. Bueter
Wilson & Associates, PLLC
1521 Merrill Drive, Suite D-220
Little Rock, Arkansas 72211

Gerald D. Morgan
Wilson & Associates, PLLC
8 Cadillac Drive
Suite 120
Brentwood, Tennessee 37027

Scott D. Johannessen
Law Offices of Scott D. Johannessen
424 Church Street, Suite 2000
Nashville, Tennessee 37219

Rick Humbracht
Bradley Arant Boult Cummings, LLP
1600 Division Street, Suite 700
Nashville, Tennessee 37203


___/s/_____ James D. R. Roberts, Jr._____

44