UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| FEDERAL HOME LOAN MORTGAGE CORPORATION, <br><br> Plaintiff/Counter-Defendant, <br><br> v. <br><br> WILLIAM KANTZ, <br><br> Defendant/Counter-Plaintiff/ Third-Party Plaintiff <br><br> v. <br><br> BANK OF AMERICA, N.A., and RUBIN LUBLIN TN, PLLC, <br><br> Third-Party Defendants. | Case No. 3:15-cv-00932 <br><br> Judge William L. Campbell, Jr. <br> Magistrate Judge Newbern |

To: The Honorable William L. Campbell, Jr., District Judge

**REPORT AND RECOMMENDATION**

Plaintiff Federal Home Loan Mortgage Corporation (Freddie Mac) initiated this case on August 17, 2015, as an unlawful detainer action against Defendant William Kantz in the Davidson County Metropolitan General Sessions Court regarding a piece of residential property located in Nashville, Tennessee. (Doc. No. 1-1, PageID# 4.) Kantz removed the action to this Court (Doc. No. 1), where it was preceded by a related action regarding the same property, *Kantz v. Rubin Lublin, LLC, et al.*, Case No. 3:14-cv-01113 (filed May 6, 2014) (*Kantz I*). It has now been joined by several other related actions. *See Kantz v. Bank of America, N.A.*, Case No. 3:17-cv-00051 (filed January 31, 2017); *Lee v. Rubin Lublin TN, PLLC*, Case No. 3:17-cv-00891 (filed May 25, 2017).

Now pending in this case are a motion to strike or dismiss filed by Third-Party Defendant Rubin Lublin TN, PLLC (Rubin Lublin) (Doc. No. 11) and a motion to dismiss a counterclaim and strike the third-party complaint filed by Freddie Mac and Third-Party Defendant Bank of America, N.A. (BANA) (Doc. No. 34).[1] These motions are ripe for consideration. For the following reasons, the Magistrate Judge RECOMMENDS that both motions be GRANTED.

**I.      Background**

This action concerns Kantz's right to maintain possession of real property located at 1244 Mary Helen Drive in Nashville, Tennessee. That property and the circumstances of its sale in foreclosure were also the subject of the *Kantz I* action. The Sixth Circuit Court of Appeals summarized the relevant facts in its consideration of *Kantz I*, and those facts are not contradicted by Kantz's filings in this action. The Court therefore repeats them here:

> In 2007, Kantz obtained a loan in the amount of $391,800 from Bank of America, NA ("Bank of America") for the purchase of his residence. Kantz executed a deed of trust conveying the property to PRLAP, Inc., as trustee for Bank of America. After Kantz stopped making payments on the loan in 2012, Rubin Lublin TN, PLLC ("Rubin"), acting as substitute trustee under the deed of trust, initiated foreclosure proceedings. Rubin noticed a foreclosure sale for February 20, 2014. Kantz alleges that a public foreclosure sale never took place at the noticed date and time, and that instead Rubin privately sold the property to Bank of America, making the foreclosure sale defective. A substitute trustee's deed indicates that Bank of America purchased the property for $398,126.15 and conveyed the property to the Federal Home Loan Mortgage Corporation ("Freddie Mac"). Kantz alleges that he would have been able to purchase the property, through an unnamed investor, for that sale price in February if Rubin had provided him the opportunity to participate in the foreclosure sale.
>
> Kantz brought a civil action in state court, claiming that the sale violated the Fair Debt Collection Practices Act ("FDCPA"), *see* 15 U.S.C. § 1692(a), and was fraudulent because Rubin did not cry the sale as claimed in the substitute trustee's deed. The matter was removed to federal court. The district court granted Kantz thirty days to repurchase the property, after which, if he did not do so, Rubin could re-notice and conduct a new foreclosure sale. In a letter to Freddie Mac, Kantz

---

[1] Kantz's pending motion to amend his answer and third-party complaint (Doc. No. 88) will be addressed by separate order.

offered that an investor was willing to purchase the property for $200,000, which Freddie Mac rejected, replying that Kantz could repurchase the property for the full indebtedness (approximately $420,000). Kantz states on appeal that his financial situation had changed since February and he could no longer afford to repurchase the property at full price. Kantz did not repurchase the property, and Rubin re-noticed the foreclosure sale to take place on August 26, 2014. Bank of America entered the sole and prevailing bid, $398,126.15, although its non-discretionary bidding instructions directed that it would immediately bid $461,359.51 in response to a third-party bid and that it would go no higher. Kantz does not allege that he would have or could have outbid Bank of America's maximum bid.

*Kantz v. Rubin Lublin TN, PLLC, et al.*, No. 15-5490, slip op. at 1–2 (6th Cir. March 30, 2017).

Judge Haynes dismissed *Kantz I* on April 6, 2015, when he granted Rubin Lublin and Freddie Mac's motions to dismiss and denied Kantz leave to amend his complaint for a third time, based on his finding that "there are not any factual allegations . . . that the August foreclosure was not properly noticed or cried," "the August foreclosure sale cured any alleged defects from the February foreclosure sale and moots many of [Kantz's] claims," and Kantz was therefore properly "divested from any interest in the property . . . and title is vested in [Freddie Mac]." *Kantz v. Rubin Lublin, PLLC*, No. 3:14-01113, 2015 WL 1543531, at *9, 13, 23 (M.D. Tenn. Apr. 6, 2015). With Kantz's appeal of that decision pending, Freddie Mac filed this detainer action.

After removing the detainer action to this Court, Kantz filed an Answer and Counter-Claim for Declaratory Action and Other Relief and Third-Party Claims Against Rubin Lublin TN, PLLC and Bank of America, NA (Doc. No. 9). In that pleading, Kantz asserts claims for a declaration that the August 26, 2014 foreclosure sale was unlawful; fraudulent foreclosure; breach of contract and of the requirement of good faith and fair dealing; violation of the Tennessee Consumer Protection Act; violations of the Fair Debt Collection Practices Act; violations of the Real Estate Settlement Procedures Act and the Truth in Lending Act; and conspiracy. (*Id.* at PageID# 120–35.)

3

Rubin Lublin has filed a motion to strike or, in the alternative, to dismiss Kantz's third-party complaint against it (Doc. No. 11); Freddie Mac and BANA have moved to dismiss Kantz's counterclaim against Freddie Mac and to strike his third-party complaint against BANA. (Doc. No. 34.) At the heart of these motions is the assertion that Kantz's claims in this action are barred by res judicata because this Court has found and the Sixth Circuit has affirmed that the foreclosure sale of the property was not unlawful. Affirming Judge Haynes's decision, the Sixth Circuit held that:

> The district court had things right: any harm Kantz might have suffered as a result of Rubin's failure to cry the February 2014 sale was cured by giving him an exclusive repurchase period and later by re-noticing the sale for August 2014. For thirty days, he had an exclusive opportunity to repurchase the home and did not take it. Kantz's pleadings stated that he would not have personally repurchased the property in either February 2014 or during the exclusive repurchase period, but rather an "investor" he had identified would do so. Kantz argues that the August sale was also defective, however, because after the property's note and deed were transferred to Freddie Mac, Rubin's appointment as substitute trustee lapsed. This argument contradicts his contention that the February 2014 sale was void: if the February 2014 sale was not legally effective, then Rubin's appointment would remain in place. Yet even if we accept that the August 2014 sale missed certain formalities, Kantz does not allege that those lapses prevented him from purchasing the home, but rather that his financial condition changed in the interim. In the end, it does not matter when the effective sale occurred, because Kantz lawfully lost his interest in the home and cannot maintain claims for fraud, breach of contract, conversion of property, or actual and punitive damages under the FDCPA. That moots all but two of his claims, damages under the TCPA and statutory damages under the FDCPA, and dismissal was proper under Rules 12(b)(1) and 12(b)(6).

(Doc. No. 226-1, PageID# 2864.) The Sixth Circuit considered Judge Haynes's rulings on Kantz's Second Amended Complaint in that action. The Sixth Circuit held that Kantz forfeited any argument that Judge Haynes erred in denying him leave to file a third amended complaint in *Kantz I* because he "failed to present any argument as to how the district court erred." (*Id.* at PageID# 2865–66.)

**II.     Legal Standard**

Both motions assert the impropriety of Kantz's third-party complaint and argue that it should be stricken under Federal Rule of Civil Procedure 14(a)(4), which provides that "any party may move to strike the third-party claim, to sever it, or to try it separately." Fed. R. Civ. P. 14(a)(4). "[T]he purpose of Rule 14 is to encourage judicial economy by permitting courts to dispose of multiple claims which arise out of the same set of facts . . . ." *Tate v. Frey*, 735 F.2d 986, 989 (6th Cir. 1984). To serve that end, district courts enjoy "considerable discretion . . . in deciding whether to permit or strike a third-party complaint." *Old Republic Ins. Co. v. Concast, Inc.*, 99 F.R.D. 566, 568 (S.D.N.Y. 1983).

"Although Rule 14(a) has never expressly provided for a motion to dismiss third-party claims, the federal courts have entertained both motions to dismiss and to strike and have not drawn distinctions between them." Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1460 (3d ed.). To that end, Rubin Lublin, Freddie Mac, and BANA argue that Kantz's third-party claims must be dismissed under Federal Rule of Civil Procedure 12. Rubin Lublin asserts that Kantz has failed to properly serve it with his third-party complaint and that his claims lack personal jurisdiction. (Doc. No. 11-1, PageID# 308.) The central argument of both motions, however, is that Kantz has failed to state a third-party claim because what he asserts is barred by the res judicata effect of *Kantz I*. (*Id.*) A claim will be barred by the res judicata effects of prior litigation if the following elements are met:

> (1) a final decision on the merits by a court of competent jurisdiction; (2) a *subsequent action between the same parties or their "privies"*, (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*GMAC Mortgage, LLC v. McKeever*, 651 F. App'x 332, 341 (6th Cir. 2016) (quoting *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997)) (emphasis in original). "Although

typically courts are limited to the pleadings when faced with a motion under Rule 12(b)(6), a court may take judicial notice of other court proceedings without converting the motion into one for summary judgment." *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010). The Court will take judicial notice of the record in *Kantz I* in its analysis of these motions.

## III. Analysis

### A. Propriety of the Third-Party Complaint Under Rule 14

It is within the Court's discretion whether to permit impleader of third parties. *Ohio Farmers Ins. Co. v. Special Coatings, LLC*, No. 3:07-1224, 2008 WL 5378079, at *13 (M.D. Tenn. Dec. 23, 2008) (citing *Doucette v. Vibe Records, Inc.*, 233 F.R.D. 117, 119–120 (E.D.N.Y. 2005)). Generally, a third-party claim is appropriate "where the third-party defendant's liability to the third-party plaintiff is dependent on the outcome of the main claim; one that merely arises out of the same set of facts does not allow a third-party defendant to be impleaded." *American Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805 (6th Cir. 2008). The third-party claim "must be founded on a third party's actual or potential liability to the defendant for all or part of the plaintiff's claim against the defendant." *Id.*

Freddie Mac's only claim in this action is for possession of the subject property. (Doc. No. 1-1.) In his third-party complaint against Rubin Lublin and BANA, Kantz seeks a declaratory judgment that the foreclosure of the property was unlawful and did not extinguish his right of possession; re-conveyance of the home to him; damages under the Tennessee Consumer Protection Act, Fair Debt Collection Practices Act, Real Estate Settlement Procedures Act, and Truth in Lending Act; and compensatory and punitive damages arising out of his common law claims. (Doc. No. 9.) If Freddie Mac prevails, Kantz will have to surrender his residence, but he will not be liable for any damages. (*Id.*) The general rule that a third-party complaint "must be in the nature

6

of indemnity, contribution, or subrogation" therefore would not apply here. *Ohio Farmers Ins. Co. v. Special Coatings, LLC*, No. 3:07-1224, 2008 WL 5378079, at *13 (M.D. Tenn. Dec. 23, 2008). Detainer actions are "summary proceedings" that "concern only the right to possession." *CitiFinancial Mortg. Co. v. Beasley*, No. W2006-00386-COA-R3CV, 2007 WL 77289, at *6 (Tenn. Ct. App. Jan. 11, 2007) (citing *Newport Hous. Auth. v. Ballard*, 839 S.W.2d 86, 89 (Tenn. 1992)). There is no liability to transfer.

"The challenge," therefore, is that this action "does not necessarily involve a claim in which the original defendant may be 'liable,' in the usual understanding of the word, to the plaintiff"; instead, "the decision is simply whether or not certain rights or duties exist." *State Coll. Area Sch. Dist. v. Royal Bank of Canada*, 825 F. Supp. 2d 573, 579 (M.D. Pa. 2011). Although courts differ in their application of Rule 14 in this context, *see id.* (collecting cases), third-party claims are not entirely precluded in actions of this nature. The broad discretion afforded courts in executing Rule 14's purpose of promoting judicial economy and "avoiding multiple and circuitous suits" counsels against "a narrow or technical interpretation of the Rule's requirements." *Old Republic*, 99 F.R.D. at 568.

Looking to the Rule's motivating principle of efficiency, courts have permitted third-party claims to be pursued in declaratory judgment actions where "the facts in the main claim and third-party action were related closely enough to further the policy of Rule 14 by permitting the impleader." *Id.* (citing *American Fidelity & Casualty Co. v. Greyhound Corp.*, 232 F.2d 89, 92 (5th Cir. 1956)). "The degree of disparity allowable . . . depend[s] upon whether the advantages gained by joining the third-party defendant outweighed any prejudice which the impleaded party might suffer." *Id.* Thus, "the nature of the relief sought by plaintiff in the underlying action may not rob defendant of its ability to implead." 3 Moore's Federal Practice § 14.04. If the defendant

7

will suffer a "loss" if the plaintiff prevails, a third-party claim may be appropriate. *State Coll. Area Sch. Dist.*, 825 F. Supp. 2d at 582 (citing 3 Moore's Federal Practice § 14.04).

Here, Kantz will lose his possession of his residence if Freddie Mac prevails. Kantz cannot transfer that loss to Rubin Lublin or BANA. However, his third-party claims against Rubin Lublin and BANA regarding the validity of the foreclosure sale are inextricably intertwined with the determination of who lawfully possesses the property, the issue presented by Freddie Mac's claim against Kantz and Kantz's counterclaim against Freddie Mac. While Rule 14 is potentially broad enough to allow third-party claims in these circumstances, s*ee State Coll. Area Sch. Dist.*, 825 F. Supp. 2d at 582 (joining "many district courts throughout the country and respected authorities on federal civil practice [who] hold that where a declaratory judgment in a plaintiff's favor may result in a loss to the defendant, the broad purposes of Rule 14(a) permit the defendant to join a third-party defendant who may be liable to it, in whole or in part, for that loss"), the inclusion of Rubin Lublin and BANA in this lawsuit would have been more procedurally apt under Rule 13(h), allowing joinder of additional parties to a counterclaim.

Rule 13 governs counterclaims and crossclaims, and subsection (h) of that rule simply states that "Rules 19 and 20 govern the addition of a person as a party to a counterclaim or crossclaim." Fed. R. Civ. P. 13(h). Kantz's answer to Freddie Mac's detainer warrant is a general denial and demand for strict proof of Freddie Mac's claim to rightful possession of the property. (Doc. No. 9, PageID# 110, ¶ 1.) The remaining twenty-six pages of his pleading are devoted to allegations and claims which he appears to assert as both counterclaims and third-party claims (*id.* at PageID# 110–11), and which are most often asserted against Freddie Mac, Rubin Lublin, and BANA; refer to them collectively as "Defendants" in conspiracy (*id.* at PageID# 134–36); and request damages against them "jointly and severally" (*id.* at PageID# 136). Where the claims of a

8

defendant's third-party pleading "are not impleader-type claims," but rather "seek[] to hold [third] parties accountable for their actions, in collaboration with [the plaintiff]," joinder as counterclaim defendants under Rule 13(h) rather than third-party defendants under Rule 14(a) is appropriate. *Osmotech, LLC v. Space Hardware Optimization Tech., Inc.*, No. 1:07-CV-0713-JDT-TAB, 2007 WL 4233447, at *3 (S.D. Ind. Nov. 29, 2007). "Although Rule 13(h) is often confused with Rule 14(a), the two rules are 'quite different in purpose and effect'; the former authorizes joinder of parties who are added simultaneously with the assertion of counterclaims against them, whereas the latter is solely an impleader provision. *Id.* (quoting 6 C. Wright and A. Miller, Federal Practice and Procedure § 1434, at 267–268 (1990)).

Under Federal Rule of Civil Procedure 20 (Permissive Joinder of Parties), "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Here, as in *Osmotech*, the question of whether Kantz's claims against Rubin Lublin and BANA arise from the same series of transactions or occurrences as the counterclaim against Freddie Mac "is not a close call;" they "arise from precisely the same facts and involve many of the same questions of law as the counterclaims against [Freddie Mac]." *Osmotech*, 2007 WL 4233447, at *4. Accordingly, reading past the labels that Kantz put to his pleading and focusing on its substance, the Court deems his pleading to assert a counterclaim against Freddie Mac to which Rubin Lublin and BANA are joined as counterclaim defendants under Rule 13, rather than to assert a third-party complaint under Rule 14 which might be stricken for improper impleader.

9

Ultimately however, regardless of how Kantz's pleading is construed, his affirmative claims against Freddie Mac, Rublin Lublin, and BANA are futile, as discussed below.

**B.     The Preclusive Effect of *Kantz I***

Freddie Mac, BANA, and Rubin Lublin further argue for dismissal under Rule 12(b)(6) based on the application of res judicata to bar relitigation of the claims and issues contained in Kantz's counterclaim and third-party complaint. Under the doctrine of res judicata, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). Thus, "a claim is barred by the res judicata effect of prior litigation if all of the following elements are present: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 577–78 (6th Cir. 2008) (quoting *Browning v. Levy*, 283 F.3d 761, 771–72 (6th Cir. 2002)).

Freddie Mac, BANA, and Rubin Lublin argue that *Kantz I* resulted in a final decision on the merits of all of Kantz's proposed claims. Specifically, the parties point out that Kantz attempted to bring each of the claims he now asserts in a proposed third amended complaint in *Kantz I*. A review of the pleadings proves this correct. Judge Haynes summarized the claims asserted in Kantz's third amended complaint as follows:

> Plaintiff moves the Court for leave to file a third amended complaint and alleges, in essence, that the February and post-stay foreclosure sales were fraudulent and failed to comply with any of the terms and conditions of the underlying note and deed of trust. Plaintiff includes BANA and Blank Rome, LLP as Defendants. Plaintiff asserts the following claims: (1) a declaratory judgment that both the February and August foreclosure sales are void and for a declaration that Defendant Rubin Lublin committed fraud, (Docket Entry No. 61–1 at ¶¶ 85–92); (2) "fraud in the February 20, 2014 foreclosure sale," *id.* at ¶¶ 93–98; (3) "fraud in the August

10

26, 2014 foreclosure sale," *id.* at ¶¶ 99–103; (4) breach of contract, *id.* at ¶¶ 104–110; (5) "return of property," *id.* at ¶¶ 111–115; (6) violation of the Tennessee Consumer Protection Act, *id.* at ¶¶ 116–125; (7) violations of the Fair Debt Collection Practices Act ("FDCPA"), *id.* at ¶¶ 126–151; (8) violations of RESPA and the Truth in Lending Act ("TILA"), *id.* at ¶¶ 152–157; and (9) conspiracy, *id.* at ¶¶ 158–168.

*Kantz I*, 2015 WL 1543531, at *5.

Here, Kantz asserts the following third-party claims: (1) a declaratory judgment that the August 26, 2014 sale was unlawful; (2) fraud in the August 26, 2014 foreclosure sale; (3) breach of contract; (4) violation of the Tennessee Consumer Protection Act; (5) violation of the Fair Debt Collection Practices Act; (6) violation of the Real Estate Settlement Procedures Act and Truth in Lending Act; and (7) conspiracy. (Doc. No. 9.) The proposed third amended complaint in *Kantz I* was broader than what Kantz now asserts as third-party claims, but everything he raises in this action was encompassed by his earlier proposed complaint.

The question then becomes whether Judge Haynes ruled on the merits of those proposed claims in *Kantz I*. Kantz argues that the *Kantz I* decision merely held that the second foreclosure sale in August 2014 cured all errors in both sales and mooted all claims related to unlawful foreclosure proceedings.[2] (Doc. No. 65-1, PageID# 1235–36.) But Judge Haynes's analysis of the proposed third amended complaint in *Kantz I* resulted in multiple explicit findings that its claims

---

[2] The bone that Kantz appears to want to pick is with this Court's references to the mootness of the claims of his Second Amended Complaint, echoed by the Sixth Circuit as it reviewed Judge Haynes's rulings on the claims in suit while finding that Kantz had forfeited review of the rulings on the viability of the claims sought to be added by the proposed Third Amended Complaint. Regardless of whether claims that have been denied as moot can be said to have been adjudicated on their merits, *Kantz I* clearly ruled on the merits of the claims of the proposed Third Amended Complaint, and the forfeiture of appellate review of those rulings does not render this Court's decision any less of a final and binding adjudication. "[I]t is well established that a final trial court judgment operates as res judicata while an appeal is pending," *Commodities Exp. Co. v. U.S. Customs Serv.*, 957 F.2d 223, 228 (6th Cir. 1992), "until and unless reversed." *Huron Holding Corp. v. Lincoln Mine Operating Co.*, 312 U.S. 183, 189 (1941).

would be subject to dismissal for failure to state a claim and were therefore futile. *Kantz I*, 2015 WL 1543531, at *9, 13, 15, 16, 20. Judge Haynes applied the standard of determining whether those claims could "withstand a Rule 12(b)(6) motion to dismiss." *Id.* at *6 (quoting *Riverview Health Inst. LLC v. Medical Mutual of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010)). Since "[t]he dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits'" for res judicata purposes, *Federated Dept. Stores*, 452 U.S. at 399 n.3, so too is the denial of a proposed amendment on grounds of futility. *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 764 F.3d 1327, 1344 (11th Cir. 2014).

This case involves either the same parties that litigated *Kantz I*, or entities in privity with those parties. There is no dispute that Kantz, Rubin Lublin, and Freddie Mac were all parties to *Kantz I*. BANA was not. However, Kantz moved to add BANA as a party to *Kantz I* in his proposed third amended complaint and described BANA as a significant figure in the scheme to defraud him, the lender and holder/servicer of the mortgage loan, and the principal whose interests Rubin Lublin represented in conducting the foreclosure sale. *Kantz I*, 2015 WL 1543531, at *11–16. Kantz's argument that these allegations are not appropriately considered in determining BANA's privity with Freddie Mac and Rubin because they are "outside the pleadings" (Doc. No. 67, PageID# 1254–55) is unavailing, as the Court has taken judicial notice of the record of proceedings in *Kantz I*. Further, Kantz's pleading in this case alleges that Rubin Lublin was and is BANA's agent (Doc. No. 9, PageID# 121, ¶ 59) and co-conspirator (*id.* at PageID# 134–35). BANA is plainly a privy of the parties to *Kantz I*.

Finally, there is no real dispute that there is an identity of the causes of action. "Identity of causes of action means an 'identity of the facts creating the right of action and of the evidence necessary to sustain each action.'" *Sanders Confectionery Prod., Inc. v. Heller Fin., Inc.*, 973 F.2d

12

474, 484 (6th Cir. 1992) (quoting *Westwood Chemical Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir.1981)). Not only are Kantz's third-party claims here and his proposed third amended complaint in *Kantz I* based on the same facts and evidence, they are largely identical.

In sum, it is abundantly clear to the Court that Kantz's counterclaim and third-party complaint in this case are comprised of claims that he litigated and lost as the plaintiff in *Kantz I*, where it was determined (in the words of the Sixth Circuit) that "Kantz lawfully lost his interest in the home" and his ability to "maintain claims for fraud, breach of contract, conversion of property, or actual and punitive damages" under the theories he advanced or proposed there. He cannot overcome the bar of res judicata and relitigate those claims as the counter-plaintiff/third-party plaintiff in this action.

**IV.   Recommendation**

In light of the foregoing, the Magistrate Judge RECOMMMENDS that Rubin Lublin's Motion to Strike or Dismiss (Doc. No. 11) and Federal Home Loan Mortgage Corporation and Bank of America, N.A.'s Motion to Dismiss Counterclaim and to Strike Third Party Complaint (Doc. No. 34) be GRANTED.

Any party has fourteen days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing those objections shall have fourteen days from receipt of any objections filed in which to file any response. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of further appeal of the findings and conclusions that it makes. *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).

ENTERED this 29th day of March, 2018.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge